OPINION
On appeal appellant sets forth the following two assignments of error:
 "I. THE DOMESTIC RELATIONS COURT OF COMMON PLEAS COMMITTED PREJUDICIAL AND REVERSIBLE ERRORS BY ITS DECISION OF JANUARY 6, 1998, BY ITS JUDGMENT ENTRY OF DIVORCE OF MARCH 6, 1998, AND BY ITS NUNC PRO TUNC JUDGMENT ENTRY OF MARCH 26, 1998, INCLUDING WITHOUT EXCLUDING OTHERS, THE FOLLOWING PROVISIONS:
 "IA: THE TRIAL COURT FAILED AND REFUSED TO ABIDE BY, TO CARRY OUT, AND ENFORCE, EACH AND EVERY OF THE MARTIAL PROPERTY DIVISION PROVISIONS OF THE ALIMONY ONLY FINAL JUDGMENT ENTRY OF JUNE 4, 1987 IN ORDERING, ADJUDGING, AND DECREEING, IN THE TWO JUDGMENT ENTRIES OF DIVORCE, THAT PLAINTIFF RECEIVE $11,743.96 FROM THE ESCROW ACCOUNT HELD BY PLAINTIFF'S COUNSEL, WHEN ALL OF THESE FUNDS HAD BEEN TAKEN BY COURT ORDER FROM DEFENDANT'S INSURANCE COMPANY, THE SAME BEING A PART OF THE MONEY OWED DEFENDANT AS A RESULT OF THE FIRE IN 1991 TO THE 334 E. MANHATTAN HOUSE AND LOT AWARDED DEFENDANT BY JUDGE DORRELL JUDGMENT ENTRY OF JUNE 4, 1987; AND ALSO FROM THE SAME SOURCE OF FUNDS $2,000.00 IN ANOTHER ESCROW ACCOUNT; AND $1,100.00 IN DEFENDANTS CREDIT UNION ACCOUNT OBTAINED AFTER THE SAID JUDGMENT ENTRY OF JUNE 4, 1987; AND IN AWARDING PLAINTIFF THE INCOME TAX REFUND CHECKS PREVIOUSLY SO AWARDED TO DEFENDANT JEROME C. WICZYNSKI BY JUDGE DORRELL OF $2,266.06 FOR 1984, AND $2,610.22 FOR 1986, BOTH OF WHICH MRS. WICZYNSKI HAD ENDORSED OVER TO DEFENDANT, AND BOTH CHECKS BEING A TOTAL OF $4,876.28; AND
 "IAA: IN AWARDING PLAINTIFF A JUDGMENT OF $3,000.00 AGAINST PLAINTIFF, BECAUSE THE SAID 334 E. MANHATTAN PROPERTY BURNED, WHEN THE SAID ALIMONY ONLY JUDGMENT ENTRY OF JUNE 4, 1987, PAGES 12, 13, PROVIDED THAT PLAINTIFF WAS TO BE GIVEN $3,000.00 ONLY `UPON THE SALE' OF THE SAID PROPERTY, AND THE PROPERTY HAS NOT BEEN SOLD; AND
 "II. THE TRIAL COURT PREJUDICIALLY AND REVERSIBLY ERRED BY THE TWO JUDGMENT ENTRIES OF DIVORCE, MARCH 4, 1998 AND MARCH 26, 1998, INCLUDING WITHOUT EXCLUDING OTHER PROVISIONS, THE FOLLOWING:
 "IIA: IN NOT CONSIDERING NOR MENTIONING IN THE DETERMINATION OF THE MARITAL PROPERTIES, THE REAL VALUE OF THE MAUMEE-WESTERN PROPERTY WHICH PLAINTIFF TESTIFIED NETTED HER FROM ITS SALE IN 1997 $38,000.00 OR MORE, THUS GIVING PLAINTIFF THIS AMOUNT MORE THAN DEFENDANT, ALTHOUGH PLAINTIFF HAD INHERITED 1/5 OF SAID PROPERTY, AND DEFENDANT FOR $25,000.00 HAD BOUGHT THE OTHER FOUR-FIFTHS FROM PLAINTIFFS BROTHERS AND SISTERS; AND
 "IIB: IN ORDERING, PAGE 7, PLAINTIFF TO RECEIVE $6,077.12, WHEN THE CLEAR, CONVINCING, AND ONLY EVIDENCE AVAILABLE FROM JEEP, PROVED THAT THE TOTAL E.I.P. EARNINGS BENEFIT PAID MR. WICZYNSKI WAS A TOTAL OF $9,827.80, FOR WHICH HALF IS $4,918.90, INSTEAD OF $6,077.12;
 "IIC: IN ORDERING MR. WICZYNSKI TO PAY IMMEDIATELY $194.56 PER MONTH BY A QUALIFIED DOMESTIC RELATIONS ORDER ON HIS WEEKLY WAGE, WHICH WITH THE OTHER PAYMENTS ORDERED LEAVE HIM WITHOUT ENOUGH MONEY TO LIVE ON, FOR A REGULAR WORK WEEK; AND IS INEQUITABLE AND UNCONSCIONABLE FOR A 70-YEAR-OLD MAN, UNDER ANY CIRCUMSTANCES; AND
 "IID: IN ORDERING MR. WICZYNSKI TO PAY CHILD SUPPORT FOR THEIR UNEMANCIPATED SON, JEFFREY, IN THE AMOUNT OF $758.10 PER MONTH WHEN THERE IS NO EVIDENCE IN THE RECORD SHOWING ANY SUBSTANTIAL CHANGE IN THE NEED FOR JEFFREY, THERE HAS BEEN NO EVIDENCE OF UNMET NEEDS FROM THE PRIOR ALLOWANCES, AND IN 1987 THE CHILD SUPPORT WAS SET AT $34.00 PER WEEK OR $147.22 PER MONTH, WHEN DEFENDANT HAD EARNINGS OVER $60,000.00, AND JUDGE LEWANDOWSKI REFUSED TO CONSIDER THE SOCIAL SECURITY BENEFIT FOR JEFFREY OF OVER $300.00 PER MONTH, OR MORE, OR THE INCOME OF PLAINTIFF FROM THE $38,000 RECEIVED AND THE AND THE [SIC] INTEREST ON THE SAME IN HER BANK ACCOUNTS; AND DEFENDANT HAS ALWAYS RESPONDED TO ANY TRUE NEEDS OF JEFFREY, TOLD DEFENDANT;
 "IIE: IN ORDERING DEFENDANT TO PAY PLAINTIFF FOR SPOUSAL SUPPORT $800.00 PER MONTH, WHEN THERE IS NO EVIDENCE OF NEED FOR ANY AMOUNT APPROACHING THAT SUM, AND PLAINTIFF CAN RECEIVE SOCIAL SECURITY BENEFITS OF $750.00 PER MONTH, OR MORE, ON MR. WICZYNSKI'S EARNINGS, BUT JUDGE LEWANDOWSKI REFUSED TO CONSIDER THE SAME OR PLAINTIFF'S ADDED INCOME FROM THE $38,000.00 RECEIVED, AND PLAINTIFF IS INTELLIGENT, FULLY COMPETENT TO HOLD AN OFFICE JOB, AS SHE DID BEFORE MARRIAGE, BUT REFUSES TO GO TO WORK; WHEN SHE WOULD BE HAPPIER SO DOING.
 "IIF: IN ORDERING DEFENDANT WICZYNSKI TO PAY MRS. WICZYNSKI'S ATTORNEY FEES IN THIS ACTION OF $4,710.00, WHEN MRS. WICZYNSKI HAS PLENTY OF CASH, AND THE PRESENT QUALIFIED DOMESTIC RELATIONS ORDERS, CHILD SUPPORT AND SPOUSAL SUPPORT ORDERS DON'T LEAVE MR. WICZYNSKI ANY MONEY EVEN TO LIVE ON."
The facts which are relevant to the issues raised on appeal are as follows. The parties were married on May 16, 1951. Four children were born as issue of the marriage: Patricia and Cynthia, now emancipated, Gregory, deceased, and Jeffrey, born May 19, 1968, who remains unemancipated due to Downs Syndrome. On July 28, 1986, appellee filed a complaint for alimony only, in which she sought spousal support, child support, an equitable division of the parties' marital property and sole custody of Jeffrey.
Hearings were held in the matter on November 6, 1986 and January 16, 1987, at which evidence was presented as to the parties' income and expenses, and the value of the marital assets. On November 3, 1988,[1] the trial court filed a judgment entry in which it granted appellee an action for alimony only, designated appellee as Jeffrey's residential parent and legal custodian and ordered appellant to pay child support and permanent spousal support. The trial court also awarded appellee one-half of appellant's $192,500 in pension benefits as of January 16, 1987, one-half of the parties' savings bonds valued at $42,752, and one-half of appellant's $12,154.25 in employee incentive plan ("E.I.P.") benefits. The court awarded appellant an uncashed 1984 federal income tax refund check for $2,266.06, and awarded appellant an uncashed 1986 income tax refund check for $2,610.22.
In addition, the trial court awarded the parties' Cadillac Eldorado and the marital home at 334 East Manhattan, Toledo, to appellant, and awarded a vacant lot at 1139 Maumee-Western in Swanton, Ohio, to appellee. The court did not place a value on the Cadillac or on either piece of real estate; however, it ordered appellant to pay appellee $3,000 out of the proceeds of any future sale of the marital home. The court also awarded appellant two motorcycles and a dirt bike, valued together at approximately $5,000, and awarded appellee $3,000 for her share of the motorcycles and $1,500 toward her attorney fees. Appellant's future pension benefits were made subject to division through a qualified domestic relations order ("QDRO").
On August 11, 1989, this court filed a decision in which we affirmed the trial court's judgment. In the following years, the parties engaged in much litigation, including several unsuccessful efforts on the part of appellee to enforce the trial court's division of marital property, and an unsuccessful effort by appellant to acquire custody of Jeffrey so the boy could be institutionalized. Because appellant continually refused to comply with the trial court's orders, he was eventually found guilty of contempt and was incarcerated for a time in the Lucas County Jail.
Sometime after the parties separated, the Manhattan Avenue home burned down. Appellant received approximately $24,000 in fire insurance proceeds, which the trial court ordered the insurance company to place in an escrow account. On September 25, 1997, the court ordered appellant's employer, Chrysler Corporation, to deposit into a separate escrow account any "profit sharing, vacation and non-wage payments payable to [appellant]."
On January 31, 1997, appellee filed a "MOTION FORCONVERSION OF ACTION FROM ALIMONY ONLY INTO AN ACTION FORDIVORCE," which was granted that same day. On February 12, 1997, appellant filed an amended complaint for divorce. On September 18, 1997, a hearing was held at which testimony was presented by appellee, appellant, pension evaluator William Kimmelman, and Chrysler payroll timekeeping supervisor Connie DeVall.
Appellee testified at the hearing that, as of that date, she had received no payments from appellant pursuant to the court's division of marital property, despite her many attempts to enforce the trial court's order. Appellee testified that after the divorce she will have to pay $225 per month for her own health insurance, in addition to health insurance for Jeffrey, who is not covered by appellant's employer. Appellant further testified that her only source of income is spousal and child support payments and Jeffrey's $223 per month in social security disability benefits. She stated that appellant's support payments were $1,241.28 in arrears as of September 9, 1997.
Appellee stated that she has $1,500 in unpaid "old attorney fees," in addition to the attorney fees incurred in this divorce action, and approximately $200 in unpaid medical bills for Jeffrey. Appellee further stated that she received $38,000 in net proceeds from the sale of the Maumee-Western property, which she deposited in a bank account.
Appellant testified at the hearing that he never sold the property at 334 East Manhattan Avenue. He further testified that he does not want to pay any spousal or child support, and he is not willing to give appellee any portion of the savings bonds.
DeVall testified at the hearing that appellant's income in 1996 was $73,490.61, and his projected income in 1997 was over $100,000.
Kimmelman testified at the hearing that appellant's monthly pension benefit as of February 1, 1997, was $1,788.25; however, appellee is entitled to less than half of that amount because the marriage ended in 1987. Kimmelman further testified that in order to compensate appellee for her portion of the saving bonds, a QDRO could be written to give her $194.56 in additional monthly benefits. However, he stated that if appellee were to die in the next several years, she would not receive her full share of the bonds. Kimmelman further testified that he is a local attorney and, in his opinion, the prevailing hourly rate for divorce attorneys is $150 per hour, and that he was paid $200 by appellee's attorney to prepare the QDRO in this case.
On January 6, 1998, the trial court filed a decision in which it found that appellant "has continually and willfully failed to comply" with the court's orders regarding the division of marital property in this case. Accordingly, the court granted the parties a divorce, designated appellee as Jeffrey's residential parent and legal custodian, ordered appellant to pay spousal and child support, and divided the marital estate. On March 25, 1998, the trial court filed a nunc pro tunc judgment entry, in which it set forth the specific manner in which the marital estate was to be divided.
The trial court found that appellant had an annual gross income in 1997 of $73,491. The court designated appellee as Jeffrey's residential parent and legal custodian, and ordered appellant to pay appellee $758.10 per month in child support, and $800 per month in permanent spousal support. The trial court noted that Jeffrey is disabled, due to Down's syndrome, and found that appellant has a statutory and common-law duty to support his disabled child during his own lifetime. The court did not deduct the amount of Jeffrey's social security benefits from the child support order.
As to the division of marital property, the trial court generally adopted the division and valuation of marital assets in the November 3, 1988 judgment entry as set forth above. However, after noting appellant's contempt for its prior orders,[2] the court awarded appellee both of the uncashed 1984 and 1986 federal income tax refund checks. The court also ordered appellant to pay appellee $3,000 plus interest for her share of the marital residence, $3,000 plus interest for the motorcycles, $6,077.12 plus interest for the E.I.P. benefits, $4,710 in attorney fees and $200 in pension evaluation fees, lump sum judgments of $997.39 and $1,241.28 plus interest for support arrearages, and $289.94 for Jeffrey's unpaid medical bills.
In order to "effectuate" its previous division of the marital property, the court awarded appellee $11,742.97 from the fire insurance escrow fund, an additional $2,000 escrow fund held by appellant's attorney, and $1,100 from appellant's credit union account. To compensate appellee for her share of the savings bonds, the trial court awarded appellee a distribution of $194.56 per month from appellant's pension, in addition to her marital share of the pension.
The standard of review for both of appellant's assignments of error is whether the trial court abused its discretion. Booth v. Booth (1989), 44 Ohio St.3d 142; Cherry v.Cherry (1981), 66 Ohio St.2d 348, 355. "The term `abuse of discretion' connotes more than an error of law of judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,218.
Appellant argues in his first assignment of error that the trial court erred by awarding appellee funds from the two escrow funds, his credit union account and the two federal income tax refund checks in order to effectuate the division of marital property. Appellant further argues that appellee is not yet entitled to receive $3,000 from the escrow for the Manhattan Avenue home, because the property has not yet been sold.
We note at the outset that, in its November 3, 1988 judgment entry, the trial court made a division of the parties' marital property pursuant to an alimony-only action. That judgment entry was affirmed by this court on appeal. Accordingly, all valuations placed on the parties' assets as of that date and the division thereof by the court are binding on the trial court and this court, and the parties may not now relitigate those issues. Bean v. Bean (1983), 14 Ohio App.3d 358, 361; Swartz v.Swartz (Feb. 24, 1997), Warren App. No. CA96-07-063, unreported.
As to the trial court's authority to order appellant to pay appellee her portion of the marital estate out of the escrow accounts and the income tax checks, pursuant to R.C.3105.171(E)(1), the trial court "may make a distributive award to facilitate, effectuate, or supplement a division of marital property." Such a distributive award may be made out of either party's separate property. R.C. 3105.171(D). A distributive award is defined as "any payment or payments, in real or personal property, * * * that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support * * *." R.C. 3105.171(A)(1). In determining the amount of such an award, the trial court must consider the factors set forth in R.C. 3105.171(F). Since appellee filed her amended complaint for divorce on January 31, 1997, R.C. 3105.171 applies. See Schulte v. Schulte (1994),71 Ohio St.3d 41, at the syllabus (R.C. 3105.171 applies prospectively to those divorce cases filed after its effective date, January 1, 1991.)
It is undisputed in this case that the funds in the two escrow accounts and appellant's personal credit union account are his "separate property." In addition, the record reflects that the trial court granted appellee both tax checks not only to effectuate the distribution of property, but to supplement it, in consideration of appellant's contemptuous behavior and refusal to comply with the court's previous orders. R.C. 3105.171(E)(1). As for the $3,000 award for appellee's share of the marital residence, the trial court clearly considered appellee's receipt of the fire insurance proceeds to be the equivalent of selling the home, and properly awarded appellee her share of those proceeds.
This court has reviewed the entire record of proceedings before the trial court and, upon consideration thereof and the law, finds that the record contains sufficient evidence to support both the trial court's decision to make a distributive award to appellee, and the amount thereof. Accordingly, the trial court did not abuse its discretion by awarding the escrow funds and the income tax refund checks to appellee to effectuate and, to a small extent, to supplement the division of marital property, and appellant's first assignment of error is not well-taken.
Appellant sets forth six arguments in his second assignment of error. The first two arguments will be considered together. First, appellant argues that the trial court erred by not redividing the parties' marital assets to reflect that appellee received $38,000 net proceeds from the sale of the Maumee-Western property. Second, appellant argues that the trial court erred by valuing appellee's E.I.P. benefits at $12,154.24 and awarding appellee one-half of that amount, when evidence was presented at the divorce hearing that appellant actually received a total of only $9,837.80 in E.I.P. benefits.
The Maumee-Western property was awarded to appellee pursuant to the court's November 3, 1988 judgment entry, which was affirmed on appeal by this court. Similarly, the trial court valued appellant's E.I.P. benefits based on evidence presented by appellant at the alimony-only hearing in 1987. As set forth above, this court may not consider issues related to the valuation of the parties' martial assets as part of this appeal. Accordingly, appellant's first two arguments are without merit.
Next, appellant argues that it was "inequitable and unconscionable" for the trial court to order him to pay appellee an additional $194.56 per month from his pension.
Appellant testified at the divorce hearing that he had no intention of cashing in his savings bonds so that appellee could receive her portion of the bonds. Kimmelman testified at the divorce hearing that if appellee received $194.56 per month from appellant's pension in addition to her marital portion of the pension benefits, she would eventually receive $21,376, the equivalent of her half of the savings bonds. As set forth above, the trial court has the authority to order a distributive award out of appellant's remaining share of his pension benefits to effectuate a division of the savings bonds. Accordingly, appellant's third argument is without merit.
Appellant next argues that the trial court's child support order of $758.10 per month far exceeds Jeffrey's actual needs. Appellant further argues that the trial court should have deducted the amount of Jeffrey's social security disability benefits from the child support award.
Generally, in reviewing matters concerning a determination of child support in a domestic relations case, the judgment of the trial court will not be disturbed absent a showing of an abuse of discretion. Booth, supra, at 144. "[I]n such proceedings the court of appeals should not independently weigh evidence, but should be guided by the presumption that the trial court's findings are correct. Miller v. Miller (1988), 37 Ohio St.3d 71.
The record demonstrates that the trial court calculated appellant's child support obligation pursuant to the factors set forth in R.C. 3113.215, based on its finding that appellant had an income in 1997 of $73,490 and appellee had an income in the same year of $0. At the time of the hearing, appellee was an unemployed sixty-nine year old woman with a high school education who was the sole caretaker of an adult disabled child. No evidence was presented at the hearing that appellee had any sources of income other than spousal support and child support, she was not receiving any social security payments on her own behalf. Further, R.C. 3113.215 does not include spousal support received by a party in the definition of income for purposes of calculating child support. Finally, the trial court properly refused to consider Jeffrey's social security disability payments in calculating appellant's child support obligation. Oatley v.Oatley (1977), 57 Ohio App.2d 226. Accordingly, appellant's fourth argument is without merit.
Appellant next argues that the trial court erred by ordering him to pay appellee $800 per month in spousal support because appellee does not need $800 per month, she is eligible to receive social security benefits, she receives interest income "from the $38,000.00 received," and she is "fully competent" to work in an office.
It is well-established that the trial court enjoys wide latitude in determining the appropriateness as well as the amount of spousal support. Bolinger v. Bolinger (1990), 49 Ohio St.3d 120,122.
Pursuant to R.C. 3105.18(E), the trial court may modify a spousal support award if it determines that the circumstances of either party have changed, and it retained jurisdiction to modify the original spousal support award. The statute sets forth guidelines for determining whether spousal support is necessary and the nature, amount and manner of such payments. Id.; Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67.
It is undisputed in this case that the trial court retained jurisdiction to modify the spousal support award.
As to the amount of spousal support, the record reflects that the trial court considered the fourteen factors set forth in R.C. 3105.18(C)(1), including the "disparity" in the parties' incomes and earning abilities, appellant's court-ordered obligations, their relative levels of education, their ages and retirement benefits, the thirty-seven year duration of the marriage, appellee's responsibility to care for an adult disabled child, and the difficulty appellee would have finding employment at her age. The trial court also found that, although appellee is eligible for social security benefits due to appellant's employment, she is unable to receive such benefits because appellant has refused to assist her in the process.
As to whether the trial court erred by awarding appellee permanent spousal support, the Supreme Court of Ohio has held that generally such an award should terminate upon a date certain, "[e]xcept in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home * * *." Kunkle,supra, at paragraph one of the syllabus.
The record demonstrates that the parties were married thirty-seven years, and that appellee was unemployed since her marriage to appellant in 1951.
As to whether the trial court should have ordered appellee to seek work, generally, in a case where a party has not sought employment, the other party "has the burden of presenting evidence of the availability and nature of employment he contends [she] could have obtained if she had sought it." Id. at 289. Other than suggesting that his sixty-nine year old wife should obtain an "office job," appellant has presented no evidence that appellee could obtain meaningful employment.
The record demonstrates that the trial court properly considered all of the required statutory factors before finding that it had jurisdiction to modify appellant's spousal support obligation, and thereafter awarding appellee permanent spousal support in the amount of $800 per month. Accordingly, appellant's fifth argument is without merit.
Finally, appellant argues that the trial court erred by awarding appellee $4,710 in attorney fees.
"An award of attorney fees is a matter within the sound discretion of the trial court." Layne v. Layne (1992), 83 Ohio App.3d 559,568.
In awarding appellee attorney fees in this case, the trial court specifically considered all of the factors set forth in R.C. 3105.18(H). Thereafter, the court stated that it based its determination on the following factors:
 "[appellant's] continual refusal to comply with valid court orders, his admissions in open Court that he will not comply with Court Orders, the relatively low earning capabilities of the [appellee], [appellee's] income of zero (0), the reasonableness of time and labor expended in this actions [sic], and the fact that [appellee] may have been prevented from fully litigating her rights without this relief * * *."
After reviewing appellee's request for attorney fees in connection with the divorce action, the court awarded her $4,710. However, the trial court denied appellee's request for $1,500 in attorney fees incurred before the filing of the divorce action because she "failed to produce convincing evidence that she paid said fees."
It is clear from a review of the record that the trial court considered the appropriate statutory factors before awarding appellee $4,710 in attorney fees. Accordingly, appellant's sixth argument has no merit.
This court has reviewed the entire record before the trial court and, upon consideration thereof and the law, finds that the trial court did not abuse its discretion in effectuating the division of marital property, ordering appellant to pay permanent spousal support of $800 per month and child support of $758.10 per month, and awarding appellee $4,710 in attorney fees. Accordingly, appellant's second assignment of error is not well-taken. The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is hereby affirmed. Court costs of these proceedings are assessed to appellant.
JUDGMENT AFFIRMED.
Melvin L. Resnick, J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.
[1] The trial court first filed a judgment entry in the alimony-only action on June 4, 1987. However, due to appellant's request for findings of fact and conclusions of law, the final judgment entry in that case was not filed until November 3, 1988.
[2] The trial court specifically found that appellant "has continually and willfully failed to comply" with the court's orders regarding the division of marital property.