BEAN, APPELLEE, *v.*
BEAN, APPELLANT.

(No. 83-04-014—Decided
December 19, 1983.)

Mr. *Richard S. Sheward,* for appellee.

Mr. *Arthur H. Thomas, Jr.,* for appellant.

RINGLAND, J. The record indicates that on December 10, 1981, trial was had before the court on the complaint for divorce filed by the appellee, Luce Michele Bean, against appellant, Michael P. Bean. Evidence was adduced and witnesses were called after which the Court of Common Pleas of Madison County took under advisement the issues of child support, real property division, personal property division, payment of debts, alimony, payment of attorney fees, child custody and visitation. A written decision was rendered and a decree filed accordingly on January 10, 1982. No appeal was had from the decision and decree by either party. On June 7, 1982, appellee filed a post-decree motion for contempt to show cause why appellant should not be held in contempt for: (1) failure to comply with the alleged previous court orders requiring appellant to pay $750 towards appellee's counsel fee previously ordered in the decree, and (2) for appellant's failure to sell his jewelry or "pay $650.00 in lieu of selling said jewelry to reduce the debt of the parties." The matter was set for hearing before the referee of the Court of Common Pleas of Madison County, pursuant to the filing of the motion.

In response thereto, motions were filed by appellant requesting: (1) that the previous order of the court relating to home mortgage payments be modified due to a substantial change in circumstances; (2) that disposition of the household furnishings and effects be made by the court in that the disposition allegedly had not been made in the final decree; (3) that modification be made of appellant's obligation to pay child support and alimony due to a substantial change of circumstances; (4) that determination be made by the court as to whether appellee violated the court's previous order when she purchased marital property (a 1980 automobile); and (5) that the court order that one half of a post-decree income tax assessment, levied by the Internal Revenue Service and paid by appellant as a result of an audit of the parties' joint tax returns filed during the marriage, be credited to appellant as a set-off against amounts he owed appellee.

After several continuances, this matter came for trial on the motions before the referee of the Court of Common Pleas of Madison County on October 14, 1982. The referee, after taking the matters under advisement, filed his report with complete findings of fact and conclusions of law. His recommendations were as follows:

"1. That the court lacked jurisdiction to make an order on the furniture and household goods since they were not in the final decree.

"2. That because the issue of the tax arrearage arose subsequent to the decree, the court lacked jurisdiction to order the appellee to reimburse appellant or give appellant a credit for any tax arrearage he paid subsequent to the decree.

"3. That while the previous decree required the appellee to sell the Transam [*sic*] automobile, her purchase was 'within the bounds of the decree.'

"4. That appellant be held in contempt for failure to pay the $750.00 attorney's fee as previously ordered.

"5. That appellant be held in contempt for failure to sell his jewelry or pay the value of said jewelry to ex-wife/appellee.

"6. That the appellant's motion to modify the previous order as to his payment of the existing mortgage payments on the marital residence not be granted.

"7. That the 'alimony' award previously made, being a definite lump sum award or property division, was not modifiable."

Objections to the recommendation and the report of the referee were duly filed by appellant. Subsequent to the objections being filed on February 3, 1983, and memoranda in support and contrary to the objections being filed by each respective party, a hearing was held before the court of common pleas. After hearing oral argument, the court took the matter under advisement, reviewed the report, read the transcript and, on March 23, 1983, entered its decision affirming the referee's report in whole and in each particular and entered judgment accordingly on April 12, 1983. To that entry a notice of appeal and a motion for stay of execution pending appeal was filed by appellant. A stay was granted by the court of common pleas as to the jail sentence previously imposed as well as to collection of any monetary judgments rendered against appellant, and an appeal bond was set. Therefore, from the entry upholding the referee's decision as well as the referee's recommendations, appeal has been taken.

The assignments of error are as follows:

"1. The court erred to the prejudice of appellant by failing to divide property of the parties not previously divided by the original divorce decree.

"2. The court erred to the prejudice of appellant when it overruled his motion to apportion one half of the parties' joint tax obligation to appellee.

"3. The court erred to the prejudice of appellant when it ruled that appellee was not obligated under the divorce decree to sell a 1980 Pontiac.

"4. The court erred to the prejudice of appellant when it found him in contempt for failing to pay $750.00 of plaintiff's counsel fees.

"5. The court erred to the prejudice of appellant when it found him in contempt for failure to sell certain miscellaneous jewelry.

"6. The court erred to the prejudice of appellant when it overruled his motion to modify an obligation to make mortgage payments on appellee's residence.

"7. The court erred to the prejudice of appellant when it overruled his motion to modify his obligation to pay alimony."

The court will discuss each assignment of error in the order listed.

### First Assignment of Error

Appellant, in his first assignment of error, claims that the court committed prejudicial error by failing to consider and divide marital property of the parties not previously divided in the original decree. His contention is that it is incumbent upon the court to divide marital property or otherwise the parties are left with the status quo. In the decree,

the trial court ordered that the real estate should remain titled in both names until the parties' child was emancipated, attained the age of eighteen or died, or upon agreement by the parties. Upon the occurrence of the above conditions, the property was to be sold, paying off the mortgage and costs of sale, after which the net proceeds were to be divided between the parties. No mention was made of the parties' personal property, other than the automobiles.

Appellant cites *Taylor* v. *Taylor* (1981), 2 Ohio App. 3d 79, a Cuyahoga County Court of Appeals case, which he contends supports his position. However, in *Taylor* the domestic relations court refused to make a property decision, leaving matters in the status quo, and *from that decision* an appeal was taken. The court of appeals correctly held that the trial court abused its discretion and remanded the matter further for trial. The situation in *Taylor,* however, can be distinguished from the case at hand. Neither appellant nor appellee filed an appeal from the original decree which omitted the disposition of personal property. Now that the appeal time has run, appellant chooses to raise the issue by a post-decree motion concerning the personal property. Therefore, the issue is whether the trial court has jurisdiction to *reopen* the divorce decree on matters of personal property division.

Ohio courts have long reviewed the issue of their "right" or jurisdiction to reopen a judgment or decree. Some decisions have based their reasoning on the doctrine of estoppel, indicating that where the appellant permitted the decree to go upon the record without appealing it, he forfeited his rights to question the decree later by collateral attack. *Petersine* v. *Thomas* (1876), 28 Ohio St. 596.

Other decisions base their reasoning on the doctrine of *res judicata. Julier* v. *Julier* (1900), 62 Ohio St. 90; *Grant* v. *Ramsey* (1857), 7 Ohio St. 158. Not only have Ohio courts held that *res judicata* applies to issues which were actually litigated and adjudicated in a divorce action, but also that the doctrine is applicable to matters which *could* have been litigated and adjudicated. " 'Whenever a matter is finally determined by a competent tribunal, it is considered at rest forever. And this principle embraces not only what was actually determined, but every other matter which the parties might have litigated in the case.' " *Petersine* v. *Thomas* (1876), 28 Ohio St. 596, 601, citing *Fischli* v. *Fischli,* 1 Blackf. 360. A court has control of the division of the property of the parties at the time of the divorce decree and not thereafter. *Stemple* v. *Stemple* (C.P. 1967), 12 Ohio Misc. 147 [41 O.O.2d 203].

A common pleas court may reopen or modify a judgment at a term subsequent to that in which the judgment was rendered only as provided by statute except in cases where the nature of the judgment or decree gives the court continuing jurisdiction. *Hall* v. *Hall* (1956), 101 Ohio App. 237 [1 O.O.2d 177]. There is no statute which provides for reopening an order concerning property division. It has previously been held that even in some matters of alimony where no provision was made in the decree for alimony, no authority exists to permit the court to modify the decree by providing for alimony. *Boling* v. *Boling* (1914), 91 Ohio St. 390. In order to provide stability, the law looked with favor on the principle of "finality of judgments." The reason for this principle is that persons must be able to rely on court rulings. If courts had continuing jurisdiction to modify all decrees, there would be confusion and uncertainty. *Popovic* v. *Popovic* (1975), 45 Ohio App. 2d 57, 64 [74 O.O.2d 84]. Therefore, consistent with this court's previous holdings in *Stone* v. *Stone* (Aug. 31, 1983), Clermont App. No. 1208, unre-

ported, and *Mace* v. *Mace* (Aug. 31, 1983), Warren App. No. 83-04-019, unreported, this court holds that no jurisdiction exists for the trial court to modify its previous decree as to personal property where the appeal time has run and an appeal had not been taken from the decree. Thus, the first assignment of error is overruled.

### Second Assignment of Error

Appellant further contends in his second assignment of error that the court erred in failing to give appellant a credit for monies which he advanced to pay delinquent taxes. The record is clear that these taxes accrued *after* the decree based upon an audit which was conducted by the Internal Revenue Service. Admittedly the audit and finding of the Internal Revenue Service involved an arrearage based upon joint tax returns which were filed during the marriage and before the divorce decree. The record, however, is devoid of any information concerning the facts that the arrearage or the amount was anticipated, or that the court was informed of this prior to issuing the decree.

After the decree was issued and after the Internal Revenue Service finding, appellant took it upon himself to resolve the post-decree assessment by making payments to the Internal Revenue Service. However, based upon the same reasoning as in the first assignment of error, the trial court lacked jurisdiction to modify the decree concerning this payment of a debt, particularly since this debt arose after the decree. The court cannot be required to anticipate all future debts particularly if the parties do not bring it to the knowledge of the court prior to the decree. However, assuming *arguendo* that the parties anticipated this debt and believed that the court should have ruled on this issue, an appeal should have been taken from the decree, which was not done. Therefore, the second assignment of error is hereby overruled.

### Third Assignment of Error

In appellant's third assignment of error, he contends that the court erred when it ruled that appellee was not obligated under the divorce decree to sell the 1980 Pontiac. While the decree required appellee to sell the 1980 Pontiac and to pay from the proceeds the $8,000 mortgage owing, the trial court ruled that appellee's transferring the automobile from M. Bean and Associates to herself and paying off the mortgage did not violate the court order.

The facts indicate that both parties at the post-decree hearing agreed that the referee should consult the trial court as to the interpretation of the court's order. The consultation was had and the results are part of the referee's finding of facts. The trial court judge advised the referee and the referee recommended that the purchase of the Pontiac was within the bounds of the decree.

From these facts alone, it appears that the parties consented to a determination by the trial court judge and this is dispositive of this issue. Appellant consented to the trial court being the final arbiter of this issue and consented to the judge's decision. Where a judgment is entered with the consent of both parties, this may be grounds for affirming such judgment on the grounds of lack of prejudice to the appellant. *Williams* v. *Martin* (1948), 82 Ohio App. 395 [38 O.O. 59].

Assuming, *arguendo*, that appellant did not consent to the court determining this issue, it is quite clear that, contrary to appellant's contention, his ex-wife's purchase of the Pontiac also cancelled appellant's obligation on the $8000 mortgage. The record is devoid of any facts indicating that appellant was prejudiced by having his debt obligation removed pursuant to the purchase by his ex-wife. The record must affirmatively show not only that error has intervened but that it was to the prejudice of the party seeking to take advantage of it.

*Hollister* v. *Reznor* (1858), 9 Ohio St. 1; *Macranczy* v. *Gelfand* (1924), 109 Ohio St. 325; *Bartges* v. *O'Neil* (1861), 13 Ohio St. 72; *Sinclair* v. *Sinclair* (1954), 98 Ohio App. 308 [57 O.O. 347]. Thus, appellant's third assignment of error is without merit and is overruled.

### Fourth Assignment of Error

Appellant indicates in his fourth assignment of error that he was unable to pay his ex-wife's attorney fees and that this was a valid defense to the charge of contempt, since it shows that there was no willful violation of the court order. The court heard testimony concerning appellant's inability to pay which was controverted by appellee. The referee, in resolving issues of credibility, found that appellant was able to pay but refused to pay.

It is not within the province of this reviewing court to determine the credibility of witnesses where the court has no opportunity to see or hear the witness. *Buckeye Bar* v. *Liquor Control Comm.* (1972), 32 Ohio App. 2d 89 [61 O.O.2d 90]. A reviewing court is bound to give credence to the trial court's conclusions as to its findings of a witness' credibility. *Meyers* v. *Hoops* (1955), 74 Ohio Law Abs. 280. The court chose to believe appellee's testimony that appellant refused to pay the attorney fees. Further, the burden is upon appellant to show his inability to pay as a defense. *Cook* v. *Cook* (1902), 66 Ohio St. 566.

Here again, based upon direct contradiction of evidence and the issue of credibility, the court believed appellee rather than appellant on this issue and, as stated above, this court will not substitute its judgment for the judgment of trial court. Therefore, the fourth assignment of error is not well-taken and is denied.

### Fifth Assignment of Error

In his fifth assignment of error, appellant contends that the court erred to his prejudice when it found him in contempt for failure to sell certain jewelry.

The decree provides that the parties should liquidate all personal items listed in paragraph 8 (miscellaneous jewelry valued at $650) at the best price available. The record also indicates that the referee found that appellee had in her possession the jewelry and refused to permit appellant to take the jewelry for the purpose of such a sale unless he would reimburse her $650, the sum representing the worth of the property as noted in the decree.

The court found that appellant should have either sold the jewelry or paid her $650. Nowhere does the order require appellant to reimburse appellee for the jewelry, but rather, it requires the appellant to use the money to pay off the debt after sale at the best price available.

This court agrees with the contention of appellant that it is impossible for him to sell items which are not in his possession. The actions of appellee precluded appellant from performing this order of the court.

In order to defend against a *prima facie* case of contempt, the party must present evidence of his inability to comply with the court order. *Rossen* v. *Rossen* (1964), 2 Ohio App. 2d 381 [31 O.O.2d 589]. In this instance, appellant presented this evidence and it is uncontroverted. Here, as distinguished from the issue of attorney fees, there is no dispute and no issue of credibility. Generally, impossibility of performance is a good defense against a contempt charge. *Wysocki* v. *Wysocki* (1951), 65 Ohio Law Abs. 156.

Further, the familiar maxim in equity of "he who comes into equity must come with clean hands," is instructive in this case. The "clean hands doctrine" of equity requires that whenever a party takes the initiative to set into motion the judicial machinery to obtain some remedy but has violated good faith by

her prior-related conduct, the court will deny the remedy. *Keystone Drilling Co. v. General Excavator Co.* (1933), 290 U.S. 240; *Kinner* v. *Lake Shore & MSR Co.* (1904), 69 Ohio St. 339. The actions of appellee, the complaining party, against appellant, in retaining possession of personal property ordered to be sold, has tarnished her "clean hands." It is appropriate, therefore, that the contempt charge not be permitted to stand and that appellant's assignment of error is well-taken. This court, therefore, reverses the judgment of the court as to its findings of contempt and accordingly, vacates the sentence as to this particular issue.

### Sixth Assignment of Error

Appellant, in his sixth assignment of error, indicates that the court erred when it overruled his motion to modify an obligation to make mortgage payments on the marital home.

Here, there was disputed testimony concerning the income and the ability of appellant to meet his financial obligations as previously set forth in the decree. Here again, the referee chose to believe the contentions propounded by appellee.

Because this involves an issue of credibility, as in the fourth assignment of error, the determination of the referee that appellant was able to meet his obligation concerning the mortgage payments will not be set aside and the assignment of error is not well-taken.

### Seventh Assignment of Error

Appellant, in his seventh assignment of error, alleges that the court erred to his prejudice when it overruled his motion to modify his obligations to pay alimony. The decree of divorce provided that:

"* * * plaintiff shall be awarded alimony for seven years from January 1, 1982, through December 31, 1988, $550.00/month for 12 months and thereafter $300.00/month through December 31, 1988. Defendant's obligation to pay said alimony shall extinguish upon his death, Plaintiff's death or Plaintiff's remarriage."

The referee held in his decision and recommendation that *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399 [75 O.O.2d 474] (citing *Aultman* v. *Aultman* [1960], 83 Ohio Law Abs. 543) was not applicable and that there was no express language conferring continuing jurisdiction upon the trial court. Further, the referee held that the above award was in the nature of a property settlement. *Wolfe* held that where an alimony award is (1) for support only, (2) for an indefinite amount, and (3) there is no property settlement or there is a property settlement and the support award is independent thereof, the jurisdiction of the court to modify will be implied in the decree irrespective that such support order is based upon an agreement of parties. *Wolfe, supra,* at 419.

Under *Wolfe*, if the order meets the "three-prong test" of support, indefiniteness and independence from any property settlement, then the court impliedly retains jurisdiction. Appellee does not disagree that the above order involves support. However, she argues that the finding of the referee, that the previous award was definite and was a property settlement, is correct.

Is the award a property division or "alimony"? The award in issue is much like the contingent "periodic payment alimony" award in *Commissioner* v. *Lester* (1961), 366 U.S. 299. This award was deemed "periodic alimony" rather than a property division for purposes of Internal Revenue determination because of the presence of contingencies thereby qualifying for special federal tax treatment. Payments subject to contingencies such as death or remarriage are regarded as periodic alimony payments rather than property division for purposes of Internal Revenue determinations because of the presence of

contingencies thereby qualifying for special federal tax treatment. *Fidler* v. *Commissioner* (C.A. 9, 1956), 231 F.2d 138; *Prewett* v. *Commissioner* (C.A.8, 1955), 221 F.2d 250. Clearly the presence of contingencies indicates that an award is periodic under the *Lester* definition and, accordingly, is not a property settlement. Further, this court has previously held that an alimony award for payment of a sum certain in installments over a definite period of time *without contingencies* is a division of property. *Vaught* v. *Vaught* (1981), 2 Ohio App. 3d 264. Thus, conversely, the addition of the contingency takes an award out of the area of property settlement and into the area of alimony.

What form of alimony is the award in the decree? The alimony provision must be read in its entirety and in conjunction with the entire divorce decree. In *Popovic* v. *Popovic, supra,* the court held that:

"Permanent alimony may be awarded in lump sum with the entire obligation being discharged either by specific property or by a lump sum cash payment. Permanent alimony may also consist of a fixed or definite amount payable in a limited or a stated number of installments. Further, permanent alimony may be for an indefinite amount to be paid in periodic payments. This can occur in one of three ways: (1) unspecified amounts for unspecified periods (2) unspecified amounts for specified periods (3) specified amounts for unspecified periods." *Id.* at 63.

A close inspection of the alimony award reveals that, while initially setting a definite amount, it has contingencies which, if they occur before the entire amount is paid, cause a cessation of alimony. Where a termination date for payment is capable of being advanced upon the happening of a contingency, the presence of that contingency indicates that the issue is indefinite and a reservation of jurisdiction to modify is implied. *Riedinger* v. *Riedinger* (Apr. 29, 1982), Franklin App. No. 81AP-137, unreported. The contingencies here are termination upon appellant's death, or upon appellee's death or remarriage, and indicate that the award is in the nature of an indefinite periodic sustenance award. This court further adopts the rationale in *Popovic, supra,* in which the court stated that "* * * it is difficult to understand why similar awards of permanent alimony for an indefinite amount and an indeterminate period of time pursuant to court decrees should be treated differently * * *" from orders when there is an incorporated agreement. *Id.* at 66.

However, this pre-*Wolfe* case eventually held that the court felt compelled to make no distinction due to the direction at that time of the Ohio Supreme Court. Had *Wolfe* pre-dated and controlled *Popovic,* the Cuyahoga County Court of Appeals might have held differently as we inferred in *Vaught* v. *Vaught, supra. Wolfe* can be interpreted to read that no distinction is made between separation agreements and court orders. The Supreme Court stated in *Wolfe* that:

"In summary, we hold, therefore, that where an alimony award is for support only, is for an indefinite amount, and *where there is no property settlement,* or if there is such a settlement, the support award is independent thereof, the jurisdiction of the court to modify will be implied in the decree *irrespective that such support order is based upon an agreement of the parties.*" (Emphasis added.) *Id.* at 419.

This court agrees with the initial rationale of *Popovic* and interprets *Wolfe* to indicate that there is no "magic" in distinguishing between an incorporated agreement and a court order as to modification of alimony.

Therefore, we conclude that the trial court did err in characterizing this as a lump sum alimony and holding that

there was no jurisdiction to modify. Appellant's seventh assignment of error is sustained and the issue is remanded to the court for further determination as to the amount, if any, that this alimony is to be modified.

In summary, therefore, the assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed in part and reversed in part and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Affirmed in part and reversed in part.*

HENDRICKSON, P.J., and JONES, J., concur.

RINGLAND, J., of the Court of Common Pleas of Clermont County, sitting by assignment in the Twelfth Appellate District.