OPINION
Plaintiff, Robert J. Thomas, and defendant, Sharon A. Thomas, were married in Highland Park, Illinois on June 21, 1969. Twenty-five years later, plaintiff filed a complaint for divorce in the Franklin County Court of Common Pleas, Division of Domestic Relations. After the defendant filed her answer and counterclaim, the trial court entered several temporary orders in an agreed judgment entry filed on February 23, 1994. Those orders designated the plaintiff as the residential parent and legal guardian of the parties' daughter, Kimberly, and ordered plaintiff to pay the defendant $4,200 per month in temporary spousal support.
On September 25, 1995, the court commenced a contested trial, during which the parties litigated the issues of property division and spousal support. In a judgment entry and decree of divorce filed on June 28, 1996, the trial court granted both parties a divorce, awarded the plaintiff liquid assets valued at $1,580,048.50, awarded defendant liquid assets valued at $1,223,030.50, and ordered plaintiff to pay the defendant $10,000 per month in permanent spousal support. The court also separately awarded the defendant the sum of $622,816.50 to be disbursed from the plaintiff's pension and profit sharing plan. While the trial court's judgment and decree was not appealed by the defendant, plaintiff filed a timely notice of appeal on July 26, 1996.[1]
In an opinion released on May 13, 1997, this court sustained two of the plaintiff's assignments of error, finding:
 A review of the trial court's decision demonstrates that the trial court failed to address the fact that [the defendant] was awarded a significant property settlement of approximately 1.2 million dollars. Clearly, a significant percentage of this property settlement was liquid assets which were available to [the defendant], and upon which investment income was available and expected. Pursuant to R.C. 3105.18(C)(1)(a), such investment income, derived from property that is disbursed or distributed under R.C. 3105.171, should be considered by the trial court in determining spousal support. [See Thomas v. Thomas (May 13, 1997), Franklin App. No. 96APF07-949, discretionary appeal not allowed (1997), 80 Ohio St.3d 1414.]
We subsequently remanded this matter and instructed the trial court to consider the defendant's investment income reasonably attributable to the defendant's share of the parties' non-pension assets. On remand, however, the trial court declined to hear oral argument or to take additional evidence, although it did allow the parties to file memoranda in support of their positions.
On April 23, 1998, the trial court issued a decision, in which it found that the defendant was capable of earning approximately $46,000 each year in investment income. Nevertheless, the trial court determined that it was not fair to require the defendant to use the interest from her share of the parties' non-pension assets to meet her daily living expenses. The trial court therefore summarily affirmed its permanent spousal support award of $10,000 per month.
On April 28, 1998, plaintiff filed a Civ.R. 52 request for findings of fact and conclusions of law. This request was denied by the trial court the very next day as being "without merit." Thereafter, plaintiff filed a second appeal, and on April 29, 1999, this court again reversed the trial court on the basis the trial court had abused its discretion in awarding the defendant spousal support, which was neither reasonable nor appropriate under the circumstances. Thomas v. Thomas (Apr. 29, 1999), Franklin App. No. 98AP-621, unreported. After our second remand, the trial court complied with this court's instructions when it filed an entry on May 24, 1999, decreasing the defendant's support payment in an amount equal to her interest-earning ability.
Asserting further error on the part of the trial court, the plaintiff filed a third appeal on June 22, 1999. However, this appeal was dismissed prior to submission to this court for decision. Shortly thereafter, plaintiff submitted a proposed Qualified Domestic Relations Order ("QDRO"), for the trial court's adoption. Plaintiff was instructed to prepare this order according to the terms of the divorce decree, and as drafted, the order disbursed $622,816.50 to the defendant from the plaintiff's pension and profit sharing plan. In response, the defendant opposed the plaintiff's order and submitted two alternative QDROs for adoption by the court. Both parties filed briefs arguing the merits of their positions, and on May 4, 2000, the trial court issued an entry which adopted the defendant's QDROs as those of the court. This appeal followed.
Plaintiff raises the following ten assignments of error for review:
 [1.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADOPTING TWO QUALIFIED DOMESTIC RELATIONS ORDERS, PREPARED BY THE APPELLEE, WHICH EFFECTIVELY MODIFIED THE PENSION PROPERTY DIVISION PROVISIONS OF THE ORIGINAL DIVORCE DECREE.
 [2.] THE TRIAL [sic] ERRED AND ABUSED ITS DISCRETION BY IMPROPERLY EXERCISING SUBJECT MATTER JURISDICTION SO AS TO MODIFY THE APPELLEE'S PENSION PROPERTY DIVISION AWARD.
 [3.] THE TRIAL [sic] ERRED AND ABUSED ITS DISCRETION BY FAILING TO ADOPT THE QUALIFIED DOMESTIC RELATIONS ORDER SUBMITTED BY THE APPELLANT WHICH SPECIFICALLY FOLLOWED THE ORIGINAL DIVORCE DECREE AND WAS APPROVED BY THE PLAN ADMINISTRATOR.
 [4.] THE TRIAL [sic] ERRED AND ABUSED ITS DISCRETION BY ADOPTING TWO QDROs PREPARED BY THE APPELLEE WHICH WERE NOT APPROVED BY THE PENSION PLAN ADMINISTRATOR; AND, REJECTING THE APPELLANT'S QDRO WHICH WAS APPROVED BY THE PLAN ADMINISTRATOR.
 [5.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY PERMITTING THE APPELLEE TO SELECTIVELY AVOID RECEIPT OF CERTAIN ASSETS CONTAINED IN THE PARTICIPANT'S PENSION PLAN.
 [6.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT THE APPELLANT WAS "ESTOPPED" FROM CONTESTING AN AWARD OF APPRECIATION TO THE APPELLEE THROUGH HER PROPOSED QDROs.
 [7.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT UTILIZED A DATE PRIOR TO THE ISSUANCE OF THE DIVORCE DECREE FOR APPRECIATION TO ACCRUE ON THE APPELLEE'S PROPERTY DIVISION AWARD.
 [8.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO CLEARLY IDENTIFY THE AMOUNT AND/OR ASSETS TO BE TRANSFERRED TO THE APPELLEE VIA THE QDROs; AND IMPROPERLY LEFT SUCH DETERMINATIONS UP TO THE SOLE DISCRETION OF THE PLAN ADMINISTRATOR.
 [9.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND THAT THE APPELLANT'S PROPOSED QDRO WAS INCONSISTENT WITH THE COURT'S ORDER, AND THAT THE APPELLEE'S PROPOSED QDRO IS CONSISTENT WITH THE COURT ORDER.
 [10.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY [sic] WHEN IT FOUND THAT THE APPELLEE'S APPRECIATION "VESTED" AS OF THE DATE OF THE DIVORCE; AND, THE TRIAL COURT'S FINDING IS INCONSISTENT WITH ITS DECISION OF MAKING THE AWARD OF APPRECIATION RETROACTIVE TO THE DATE OF TRIAL.
In his first three assignments of error, plaintiff argues that the trial court impermissibly modified the terms of the judgment entry and decree of divorce when it entered a QDRO which altered the prior property division and the distribution of the plaintiff's pension and profit sharing plan.
A trial court is given discretion which it must use in order to equitably divide and distribute marital property between the parties to a divorce or dissolution. Ricketts v. Ricketts (1996), 109 Ohio App.3d 746, discretionary appeal not allowed (1996), 76 Ohio St.3d 1473. There is no question that the plaintiff's retirement and pension benefits are marital property subject to division. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177,178. However, these benefits are a unique type of asset, subject to the provisions of the Employee Retirement Income Security Act of 1974, Title 26, U.S.Code. Under that Act, qualified retirement and pension plans are not alienable. Thus, only the plaintiff may hold a direct legal interest in the plan absent the issuance of a QDRO. See Sections 206(d)(3)(B)(i)(I) and 414(p)(1)(A)(i), Title 26, U.S. Code
Under the Employee Retirement Income Security Act, the defendant may be considered to be an "alternate payee" or beneficiary of the plaintiff's plan, but not a participant or owner. Hoyt, supra. Therefore, in order to divide and distribute this property, the trial court must enter a QDRO, as it is the QDRO which creates the defendant's right to funds held by the plan.
As with other types of marital property, the trial court lacks jurisdiction to modify the distribution of a retirement plan after the issuance of a judgment entry and decree of divorce. R.C. 3105.171(I). In other words, a court has control over the division of property at the time of the divorce decree, but not thereafter. See Wolf v. Wolf (1976), 46 Ohio St.2d 399; and Bean v. Bean (1983), 14 Ohio App.3d 358,361. The reason for this principle is that persons must be able to rely on court rulings. If courts had continuing jurisdiction to modify decrees, there would be uncertainty and confusion. Popovic v. Popovic (1975), 45 Ohio App.2d 57, 64. In order to avoid uncertainty, the law looks with favor on the principle of "finality of judgments." "Whenever a matter is finally determined by a competent tribunal, it is considered at rest forever." Petersine v. Thomas (1876), 28 Ohio St. 596, 601.
Although the law strongly favors finality, a trial court may reopen or modify a judgment as provided by statute, or in cases where the nature of the judgment or decree gives the court continuing jurisdiction. Hall v. Hall (1956), 101 Ohio App. 237. However, the division of marital property does not qualify for either exception as R.C. 3105.171(I) provides that "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." Accordingly, the division and distribution of the plaintiff's pension and profit sharing plan, as set forth by the court in its judgment entry and decree of divorce, may not now be modified by the court by way of the QDRO.
Conceding this point, as she must, defendant urges us to find the trial court acted within the bounds of its jurisdiction on the ground that it merely "interpreted" and did not modify the terms of what the defendant characterizes as an "ambiguous" divorce decree. While a trial court is permitted to settle confusion over the interpretation of an ambiguous divorce decree, Bond v. Bond (1990), 69 Ohio App.3d 225, the terms of this court's decree are not ambiguous, and are therefore not subject to interpretation.
After a contested trial, the trial court, skilled in drafting divorce decrees, divided and distributed the parties' retirement assets as follows:
 The parties have two retirement accounts, an IRA from McDonald Company * * * with a value of $6,015.00 and a Pension/Profit Sharing Plan from S G valued at $1,245,633.00 as of November 6, 1995. * * * The Court hereby ORDERS that Defendant shall receive the McDonald Company IRA * * * free and clear from any claim by Plaintiff. The Court further ORDERS that Defendant shall receive $622,816.50 from Plaintiff's pension/profit sharing plan. * * *
The defendant's award of $622,816.50 from the plaintiff's pension and profit sharing plan was a division of marital property which was not appealed by the defendant. This distribution does not contain an award of interest, nor any provision for the allocation of investment performance to the defendant. Nevertheless, the trial court endeavored to justify its "interpretation" of the decree, thus permitting the provision in the QDRO which awarded the defendant interest, explaining that:
 If Plaintiff were allowed to keep the interest that has accumulated on his portion and on Defendant's portion [of the pension and profit sharing plan], he would receive a windfall. * * *
 Further, the Court finds that Plaintiff is estopped from asserting that growth cannot begin until entry of the QDRO. When arguing before the Court of Appeals, Plaintiff had his spousal support decreased based on the premise that Defendant would receive growth on the pension for a period of 10 1/2; years. * * * Plaintiff benefited from his argument that Defendant's portion of the pension would grow by getting his spousal support obligation decreased. He cannot now argue the exact opposite position to keep growth that has accumulated on Defendant's share of the plan. * * *
The trial court's reasoning is flawed for a number of reasons. First, the manner in which the trial court divided the parties' respective interests in the pension and profit sharing plan is not ambiguous. There is nothing unclear about either the manner in which the trial court set the value of the plan, or the amount to which the defendant is entitled. While the trial court could have awarded the defendant a percentage of the plan's value to be calculated at a time which would reflect any post-decree growth or decline, it did not do so. Instead, the court set the value of the plan at $1,245,633 as of November 6, 1995, and awarded the defendant the specific sum of $622,816.50 as of the date of the decree. This allocation and distribution was there for the defendant to challenge on appeal had she seen fit. She did not do so at the time, but chose instead to ask the court to increase her award nearly four years later. However, a party is not entitled to a modification of a property division because he or she later wants something more than what he or she received. George v. George (Sept. 23, 1998), Summit App. No. 18866, unreported; Cox v. Cox (Feb. 1, 1999), Warren App. No. CA98-04-045, unreported.
Notably, the court itself made no finding that the decree was ambiguous, but only: (1) that the plaintiff would receive a "windfall" given the circumstances four years after the decree; and (2) that the plaintiff was estopped from challenging the modification. However, both of these reasons — perceived inequity and estoppel — are irrelevant to the issue of whether the terms of the decree are ambiguous. Furthermore, even if equitable estoppel could retroactively create an ambiguity, our previous decisions in this matter were clear in their application to the defendant's share of the parties' non-pension assets, not to those contained in the pension and profit sharing plan. The reduction in the plaintiff's spousal support obligation was warranted based upon the investment income potential of the defendant's share of the parties' non-pension assets and had nothing to do with the distribution of the pension and profit sharing plan.
Finally, the divorce decree is not ambiguous because the trial court failed to award the defendant interest on her pension distribution when it could have done so. In other words, the decree is not ambiguous because it does not disburse to the defendant something to which she now lays claim. At the time of the divorce decree, any future increase or decrease in the value of the plan was indeterminate. That potential increase or decrease was therefore neither an asset nor liability to be divided. While forward thinking might have made provision for this potentiality, the trial court did not do so, nor did either of the parties request the court to do so. The plaintiff could have asked for protection should the plan decrease in value, yet he did not. On the other hand, the defendant could have asked for an award of interest, or pursued distribution long ago in order to allow her access and control over this portion of her property division, yet she did not.
To add a provision for interest in this case is not the interpretation or enforcement of an existing order, but the modification of the court's property division. Were this modification permitted, a party, by his or her action or inaction, would be able to create an ambiguity where none otherwise exists. For example, the defendant might have made a strategic decision not to challenge the terms of the award, or to ask the court to fashion a distribution of a percentage of the plan tied to the plan's performance. In this manner, the defendant would be assured of receiving no less than $622,816.50 should the plan decrease in value, while at the same time preserving her right to seek an additional distribution should the plan increase in value.
The trial court's attempt to revisit the retirement distribution, almost six years after the divorce decree, is outside of the bounds of its jurisdiction. Because the court's addition of interest is not the interpretation or enforcement of an existing order, but a modification of the property division, plaintiff's first, second, and third assignments of error are well-taken.
In his fourth assignment of error, plaintiff contends the trial court abused its discretion when it adopted a QDRO which was not approved by the plan administrator. While the trial court did abuse its discretion when it attempted to enter a QDRO which modified the property division set forth in the divorce decree, it did so by acting outside of the bounds of its jurisdiction, not by merely failing to adopt a QDRO which had been "approved" by a plan administrator. Plaintiff cites no authority which requires trial courts to adopt QDROs which are approved by plan administrators. Accordingly, plaintiff's fourth assignment of error is not well-taken.
In his fifth assignment of error, plaintiff attacks a provision contained in the trial court's orders which would purportedly allow the defendant to pick and choose the assets she receives from the plan administrator. Plaintiff's challenge is well-taken.
The language included in the trial court's offending QDRO provides, as follows:
 * * * [Defendant's] accounts should not contain any interest in any limited partnerships or closely held businesses held by the Participant in the Plan. Excluding limited partnership and closely held business interests, her accounts shall be initially established in the same ratio (i.e., fund mix percentage) as the Participant currently maintains his accounts at the time the [defendant's] account(s) are established.
Again, the trial court is without jurisdiction to make this change or addition to the defendant's property division. There is nothing in the court's decree which might arguably allow the defendant to pick and choose which types of assets she is to receive from the pension and profit sharing plan. Accordingly, plaintiff's fifth assignment of error is well-taken.
In his sixth assignment of error, plaintiff claims the trial court erred when it found that he was estopped from contesting the adoption of the defendant's QDROs and, specifically, from challenging the court's award of appreciation. As we explained earlier, in its judgment entry the court concluded that the plaintiff is "estopped from asserting that growth cannot begin until entry of the QDRO." According to the trial court, the reason plaintiff is estopped from challenging the court's action is the result of the plaintiff's prior successful challenge to the court's award of spousal support. However, this conclusion is erroneous.
First, the trial court found that the plaintiff is estopped because he previously argued the defendant's spousal support should be reduced by the amount of investment income fairly attributable to the defendant. However, this investment income was income arising from the non-pension assets distributed to the defendant, not the potential income or appreciation attributable to the pension plan assets. Accordingly, the plaintiff has not taken an inconsistent position.
Second, and more fundamentally, the doctrine of estoppel, even if applicable to the facts of this case, cannot confer subject matter jurisdiction on the court, nor can it retroactively create an ambiguity in the divorce decree. Accordingly, plaintiff's sixth assignment of error is well-taken.
In his seventh assignment of error, plaintiff contests the court's decision to award appreciation on the pension assets beginning on November 6, 1995, and not from June 28, 1996, the date of the divorce decree. In light of our disposition of plaintiff's first three assignments of error, this assignment of error is moot.
In his eighth assignment of error, plaintiff contends the trial court erred when it instructed the plan administrator to make his or her own calculations as to what type of appreciation was to be credited to the defendant, and what classes of assets were to be excluded from distribution to the defendant. This assignment of error is also moot.
In his ninth assignment of error, plaintiff argues the trial court abused its discretion when it found that his proposed QDRO was inconsistent with the terms of the divorce decree. We have carefully and fully reviewed the proposed QDRO submitted by the plaintiff to the trial court. Having done so, we agree that this proposed QDRO does in fact accurately comply with the terms of the divorce decree. Plaintiff's ninth assignment of error is therefore well-taken.
In his tenth and final assignment of error, plaintiff asserts the trial court erred when it found the defendant had a "vested" share or interest in the plaintiff's pension and profit sharing plan as of the date of the divorce. While a spouse may, or may not, have an equitable interest in pension funds earned during the course of a marriage, under the Employee Retirement Income Security Act, qualified plans are not alienable, and no person, other than a plan participant, may hold an interest absent the issuance of a QDRO. See Sections 206(d)(3)(B)(i)(I) and 414(p)(8), Title 26, U.S.Code. Therefore, the trial court was incorrect when it concluded that the defendant's interest in the pension and profit sharing plan vested as of the date of the decree, when, in fact, it could vest only with the issuance of a QDRO. Plaintiff's tenth assignment of error is therefore well-taken.
For the foregoing reasons, plaintiff's first, second, third, fifth, sixth, ninth, and tenth assignments of error are sustained, his fourth assignment of error is overruled, and his seventh and eighth assignments are rendered moot. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
 ______________ PETREE, J.
BRYANT, P.J., and TYACK, J., concur.
[1] A thorough factual history of this case is included in our opinion ruling upon the plaintiff's first appeal. Thomas v. Thomas (May 13, 1997), Franklin App. No. 96APF07-949, unreported, discretionary appeal not allowed (1997), 80 Ohio St.3d 1414.