OPINION
{¶ 1} The defendant-appellant, Gloria J. Smith, appeals the judgment of the Marion County Common Pleas Court, Domestic Relations Division, denying her motion for relief filed pursuant to Civ.R. 60(B)(5).
 {¶ 2} The plaintiff-appellee, James L. Smith, filed a complaint for divorce on June 16, 2004. The final hearing was held on January 19, 2005, whereat the parties entered into a negotiated settlement on the record as to property distribution. On March 22, 2005, the trial court filed an Agreed Judgment Entry/Decree of Divorce, journalizing the parties' agreement and granting the divorce. On September 1, 2005, the court filed a nunc pro tunc judgment entry in which it awarded to James a Prudential Financial life insurance policy, number E0224304, and ordered Gloria to remove her name from the account. The court made its orders retroactive to March 22, 2005.
 {¶ 3} On March 22, 2006, Gloria filed a motion for relief from judgment under Civ.R. 60(B)(5), alleging that the Prudential Financial life insurance policy was marital property, that she had been mentally and emotionally unprepared at the final divorce hearing to present evidence concerning the policy, and that she was entitled to half of the policy's value. The trial court overruled Gloria's motion in a judgment entry filed on June 27, 2006. Gloria appeals the trial court's judgment and asserts one assignment of error for our review. *Page 3 
 Assignment of Error The court erred by denying Appellant's motion to vacate pursuant to Ohio Civil Rule 60(B).
 {¶ 4} The judgment appealed from is a denial of a motion for relief from judgment. Civ.R. 60(B)(5) states:
 [o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time[.]
To prevail on a Civ.R. 60(B) motion, "`"the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."'" Dept. of Taxation v.Freeman, 3rd Dist. No. 5-05-17, 2006-Ohio-2372, at ¶ 5, quoting Reyna v. Escobar, 3rd Dist. No. 13-04-39, 2005-Ohio-424, at ¶ 6, quoting GTE Automatic Elec., Inc. v. ARC Indus., Inc. (1976),47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus.
 {¶ 5} Absent an abuse of discretion, we will not disturb a trial court's denial of a Civ.R. 60(B) motion. Freeman, at ¶ 4, citingReyna, at ¶ 6, citing Strack v. Pelton, 70 Ohio St.3d 172, 174,1994-Ohio-107, 637 N.E.2d 914. An *Page 4 
"`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144, internal citations omitted. For the reasons that follow, we sustain Gloria's assignment of error, holding that the trial court abused its discretion in denying her motion.
 {¶ 6} This litigation began when James filed his complaint for divorce. At that time, James also filed a "Schedule III: Property" form listing the parties' property. Included under the "Life Insurance" category was a "Prudential" account, which James listed as his property with an unknown value. (Schedule III, Jun. 16, 2004, at ¶ 8). On July 27, 2004, Gloria filed her answer and counterclaim as well as an "Affidavit of Income Expenses and Financial Disclosure." In the affidavit, Gloria disclosed two Prudential life insurance policies, one in her name and the other in James'. (Aff, Jul. 27, 2004, at 9). Gloria did not indicate a value for the policies.
 {¶ 7} On September 21, 2004, James filed a pre-trial statement. Attached thereto was a quarterly statement for a Prudential Financial life insurance policy with a cash value of $12,010.34. (Pl. Pre-Trial Statement, Sep. 21, 2004, at Ex. A). The statement was dated December 31, 2003, and although the exhibit is identified on its second page, the first page is printed on the opposite side of the *Page 5 
paper. (Id.). Page 1 of the exhibit indicates that the statement is mailed to James, but that he and Gloria are joint owners of the policy. (Id., at Ex. A, 1).
 {¶ 8} On January 12, 2005, Gloria filed her trial brief, in which she requested a payment of $5,000 for James' "half of the outstanding debts that [Gloria] paid when he left the marital residence." (Def. Tr. Brief, Jan. 12, 2005, at ¶ XIII, 6). Subsequently, James filed a pre-trial brief, and attached thereto was a second copy for the quarterly report for the Prudential Financial life insurance policy. However, this copy evidenced only Page 2 of the statement, which does not show any ownership information. (Pl. Tr. Brief, Jan. 13, 2005, at Ex. A). Also attached to James' pre-trial brief was an updated "Schedule III: Property" form. The updated Schedule III listed a "Prudential" life insurance policy owned by James with a face value of $25,000. (Id. at Schedule III: Property, ¶ 8).
 {¶ 9} On January 19, 2005, the trial court held the final divorce hearing. At the beginning of the hearing, the parties indicated that they had reached an agreement as to property distribution, and James' counsel read that agreement into the record. After discussing the parties' agreement as to the distribution of several assets,[1] James' attorney stated:
 Um, with respect to motor vehicles, uh, and the — and the intangible personal property , I guess the easiest way that — to resolve that is to basically say that whatever either party has in their name or possession at the present time, irrespective of what *Page 6 it is, whether it's motor vehicles, bank accounts, what have you, they would keep their intangible — intangible personal property.
(Emphasis added). (Hearing Tr., Apr. 24, 2006, at 3). Gloria's counsel stated that the provisions read into the record were his understanding of the parties' agreement. (Id., at 4). Upon inquiry, James indicated that the record reflected his understanding of the property distribution and his agreement thereto. (Id., at 5). Also upon inquiry, Gloria expressed similar responses. (Id., at 5-6). The court then heard evidence concerning the $5,000 Gloria had requested as part of her counterclaim. Essentially, Gloria sought the money to pay other debts associated with the divorce and her mental and emotional health.
 {¶ 10} On January 21, 2005, the trial court filed a "ruling" denying Gloria's request for a distributive award of $5,000. The court noted that Gloria's "reasons, although understandable, are not quantifiable. Many of the reasons [c]ited by the Defendant, is the hurt she underwent because of the demise of the marriage." (Ruling, Jan. 21, 2005, at 1-2). The court also ordered James' counsel to prepare a Judgment Entry Decree of Divorce. (Id., at 2).
 {¶ 11} On March 22, 2005, the court filed an agreed judgment entry/final decree of divorce. The judgment entry appears to reflect the terms of the parties' agreement as stated on the record at the final hearing. Specifically, the entry states, "[i]t is further ORDERED any property not referred to previously herein shall be the property ofthe person whose name or possession said property was in *Page 7 at the time of the filing of the Judgment Entry ." (Emphasis added). (J. Entry, Mar. 22, 2005, at 4). The judgment entry does not specifically refer to a Prudential Financial life insurance policy. See Brunk v.Brunk (Feb. 19, 1991), 3rd Dist. No. 1-90-6, unreported, quoting Bolen v. Young (1982), 8 Ohio App.3d 36, 37, 455 N.E.2d 1316
("`where the parties to an action voluntarily enter into a settlement agreement in the presence of the trial court, the agreement is a binding contract and may be enforced * * * the trial judge may, sua sponte, approve a journal entry which accurately reflects the terms of the agreement, adopting the agreement as his judgment.'").
 {¶ 12} On September 1, 2005, the trial court filed a nunc pro tunc judgment entry, determining that James and Gloria were "still joint owners" of the Prudential Financial life insurance policy. The court awarded the policy to James and ordered Gloria to remove her name from the account. The court made its orders retroactive to the date of the agreed judgment entry, March 22, 2005.
 {¶ 13} Courts may make judgments nunc pro tunc so that "`the records of a court or other tribunal may be made to speak the truth.'" Ruby v.Wolf (1931), 39 Ohio App. 144, 146, 177 N.E. 240, quoting Helle v. Pub.Util. Comm. (1928), 118 Ohio St. 434, 439, 161 N.E. 282. However, a court's power to enter a nunc pro tunc judgment is not unlimited. "The power `is restricted to placing upon the record evidence of judicial action, which has been actually taken,' and `it can be *Page 8 
exercised only to supply omissions in the exercise of functions that are clerical merely.'" Id., quoting Jacks v. Adamson, (1897),56 Ohio St. 397, 402, 47 N.E. 48. Most importantly, "a mere erroneous judgment cannot be corrected by a nunc pro tunc entry." * * * The function of anunc pro tunc is not to change, modify, or correct erroneousjudgments, but merely to have the record speak the truth." (Emphasis added). Id., at 146-147, quoting Atkinson v. Atchinson, Topeka SantaFe RR. Co. (1883), 81 Mo. 50. See also Ehmann v. Ehmann (Feb. 11, 2000), 6th Dist. No. L-99-1249, unreported, citing State ex rel.Litty v. Leskovyansky, 77 Ohio St.3d 97, 100, 1996-Ohio-340,671 N.E.2d 236; State ex rel. Fogle v. Steiner, 74 Ohio St.3d 158, 163-164,1995-Ohio-278, 656 N.E.2d 1288 ("Nunc pro tunc entries correct judicial errors, but are limited in proper use to reflecting what the court actually decided, not what the court should have decided or intended to decide").
 {¶ 14} The nunc pro tunc entry filed in this case constitutes more than a mere clerical correction, it is a modification of the parties' contract to divide their property. R.C. 3105.171(I) provides that a division of property "is not subject to future modification by the court." Trial courts may not alter a division of property after it has become final in the final divorce decree. Hughes v. Hughes (May 19, 1997), 9th Dist. No. 96-P-0196, unreported, citingCoad v. Coad (Feb. 2, 1990), 6th Dist. No. H-88-37, unreported, citing Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, *Page 9 350 N.E.2d 413; Bean v. Bean (1983), 14 Ohio App.3d 358, 471 N.E.2d 785. However, R.C. 3105.171(I) does not alter the court's jurisdiction to enforce its orders. Hughes, citing Peck v. Peck (Jun. 2, 1989), 11th Dist. No. 88-A-1385, unreported.
 {¶ 15} The final divorce decree and agreed judgment entry was filed on March 22, 2005. The parties' briefs indicate that the nunc pro tunc entry was precipitated by James' inability to cash out the Prudential Financial life insurance policy without Gloria's signature since she was named as a joint owner on the policy. Neither party filed any motions before the court filed its nunc pro tunc orders. However, the nunc pro tunc states:
 It now comes to the attention of the Court that a [sic] Agreed Judgment Entry Final Decree of Divorce was filed on March 22, 2005, left out specific language regarding a Prudential Financial account. The Court finds that the Prudential Financial account number, E0224304 under contract date March 30, 2001, was to be the sole property of the Plaintiff, James L. Smith, and subsequently it was recently determined that both the Plaintiff and the Defendant were still joint owners of the account. The Prudential Financial account should be set off to the Plaintiff, James Smith, and, therefore, the Agreed Judgment Entry Final Decree of Divorce filed herein on March 22, 2005 failed to specifically address the Prudential Financial account.
(Nunc Pro Tunc, Sep. 1, 2005).
 {¶ 16} Our review of the final hearing transcript, the agreed judgment entry and final decree of divorce, and the nunc pro tunc indicate that the parties did not specifically address the Prudential Financial life insurance policy; however, their *Page 10 
contract did include a residual clause. The record is clear that the nunc pro tunc was improper because it attempted to address issues that were not merely clerical, and because the trial court lacked jurisdiction to file the nunc pro tunc as it was a modification of the parties' final property distribution. Accordingly, the nunc pro tunc entry is void, and the trial court is ordered to vacate that judgment.Ehmann, citing Patton v. Diemer (1988), 35 Ohio St.3d 68,518 N.E.2d 941, at paragraph four of the syllabus.
 {¶ 17} Because the trial court lacked jurisdiction to file the nunc pro tunc, it abused its discretion in denying Gloria's Civ.R. 60(B) motion. The sole assignment of error is sustained.
 {¶ 18} The judgment of the Marion County Common Pleas Court Domestic Relations Division is reversed. This matter is remanded for the trial court to vacate the nunc pro tunc judgment entry filed on September 1, 2005.
Judgment reversed.
 ROGERS, P.J., and PRESTON, J., concur. r
[1] The Prudential Financial life insurance policy was not one of the assets specifically distributed in the parties' agreement. *Page 1