OPINION
{¶ 1} Appellant John Wilkins appeals a post-decree decision of the Tuscarawas County Court of Common Pleas, concerning the issue of a life insurance provision in the parties' separation agreement. Appellee Paula Lorenz is appellant's ex-wife. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee entered into a separation agreement on May 24, 1999, concerning dissolution of their marriage. At that time, the parties owned a farm in Coshocton County, Ohio. The separation agreement called for certain distributive payments to appellee, plus $3,500 in monthly spousal support to appellee for 11 years. No child support obligation was set forth in the parties' shared parenting agreement.
 {¶ 3} Appellant and appellee filed a petition for dissolution of their marriage in the Tuscarawas County Court of Common Pleas on May 25, 1999. On July 7, 1999, the court held a hearing and granted the dissolution of the parties' marriage. The aforesaid separation agreement and a shared parenting plan were approved and adopted as part of the court's order. Article 11, concerning life insurance, stated as follows:
 {¶ 4} "Both parties agree that there is one life insurance policy at the present time through the Modern Woodmen Company of Rock Island, Illinois, for $750,000.00. Said policy shall be the sole property of the husband. Any benefits coming from said policy shall also be the sole property of the husband with the exception that the husband agrees to name the wife as beneficiary upon said policy. In the event the husband should predecease the wife, the wife shall be entitled to any proceeds as being named as beneficiary upon said policy. In the event the wife predeceases the husband, all portions of said policy shall be sole property of the husband. *Page 3 
 {¶ 5} "There are two other policies of life insurance with the Modern Woodmen Company of Rock Island, Illinois. Said policies shall be the sole property of the husband. The husband is in the process of cashing in said policies to receive the cash surrender value in order to provide monies for the wife as outlined in other Articles in this Agreement."
 {¶ 6} Article 3-A dealt with the real property of the marriage. Paragraph 1 dealt with the family farm. It called for appellee to have the right to live in the farmhouse for one year rent-free and for appellant to have the right to farm the property. Paragraph 1 continues in pertinent part as follows:
 {¶ 7} "At the end of one year the farm shall be sold. From said proceeds, after payment of all selling expenses and mortgages, the wife shall receive $120,000.00. If said sale does not bring $120,000.00 in equity after all expenses have been paid to include the pay off of all mortgages, then the husband shall make up the difference so that the wife does receive $120,000.00 from the sale. Wife shall receive $120,000.00 excluding all capital gains taxes which husband shall be solely responsible for upon the $120,000.00. This obligation is not dischargeable in bankruptcy. All equity received above the wife's $120,000.00 shall go to the husband with one exception. If the farm sells for a price in excess of $330,000.00, then all equity received above $330,000.00, once the wife has been paid off and the mortgages have all been paid off, shall be divided one half to each party."
 {¶ 8} Subsequent to the dissolution of the marriage, certain issues apparently arose concerning the parties' interpretation of the separation agreement. On January 23, 2007, appellant filed a motion to interpret and clarify the separation agreement. In *Page 4 
response, appellee filed a motion to dismiss appellant's motion. She also filed a motion to compel the sale of the family farm, to compel the payment of the balance owed to her under the separation agreement, and for an order compelling appellant to produce a copy of the declaration page and policy for life insurance.
 {¶ 9} A hearing was held on February 20, 2007 concerning these matters. The hearing could not be finished and was continued until April 2, 2007. In the interim, appellee filed a motion for contempt against appellant on March 9, 2007. The hearing, including the contempt issue, was concluded on April 2, 2007.
 {¶ 10} In a decision filed October 25, 2007, the trial court magistrate found that the family farm issue was resolved because appellee had received accord and satisfaction in her receipt of funds in 2000 for the farm. As to the issue of life insurance, the magistrate interpreted the court's 1999 judgment entry adopting the separation agreement to mean that appellant was to maintain life insurance for appellee while he owed her an obligation of spousal support and in the amount of spousal support still due. The magistrate went on to interpret the separation agreement to allow appellant to use any life insurance policy of his own choosing to accomplish this goal. The magistrate also found the motion to show cause against appellant should be dismissed, with an award of attorney fees for appellant from appellee.
 {¶ 11} Appellee thereafter filed an objection to the magistrate's decision. A hearing was held on the objection on January 28, 2008. By entry issued on February 12, 2008, the trial court granted appellee's objections concerning the life insurance. On page 4 of the judgment entry, the trial court stated that it "finds that the separation agreement provides that [Appellant] John S. Wilkins maintain the then existing life *Page 5 
insurance policy with Modern Woodmen Company * * *." The court went on to require appellant to use the Modern Woodmen policy to name appellee as the beneficiary and not another policy appellant had purchased. The court also overturned the magistrate's decision concerning the payment of appellant's attorney's fees by appellee.
 {¶ 12} Appellant filed a "motion for reconsideration" with the trial court on February 22, 2008. Of specific issue was the trial court's use of the term "maintain" in its order of February 12. The matter was heard on March 10, 2008. By entry on the same date, the trial court overruled the motion for reconsideration.
 {¶ 13} Appellant filed a notice of appeal from both decisions of the trial court on March 12, 2008. A stay of execution was thereafter granted by the trial court. Appellant herein raises the following sole Assignment of Error:
 {¶ 14} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ORDERING THE APPELLANT-CROSS-APPELLEE TO `MAINTAIN' A LIFE INSURANCE POLICY AND IN VACATING ITS MAGISTRATE'S DECISION TO INTERPRET THE ORIGINAL DECREE."
 {¶ 15} On March 21, 2008, appellee filed a notice of cross-appeal. She herein raises the following Assignment of Error upon cross-appeal:
 {¶ 16} "I. THE COURT COMMITTED REVERSIBLE ERROR TO APPELLEE/CROSS-APPELLANT BY FAILING TO FIND APPELLANT/CROSS-APPELLEE IN CONTEMPT OF A PRIOR ORDER OF THIS (SIC) COURT FOR HIS FAILURE TO NAME APPELLEE/CROSS-APPELLANT AS THE BENEFICIARY OF THE MODERN WOODMEN COMPANY LIFE INSURANCE POLICY AND FOR HIS *Page 6 
FAILURE TO PAY THE $395,000.00 LUMP SUM OWED TO APPELLEE/CROSS-APPELLANT."
 I. {¶ 17} In his sole Assignment of Error, appellant contends the trial court abused its discretion in ordering appellant to "maintain" the life insurance policy. We disagree.
 {¶ 18} Under the principle of finality of judgments, a trial court has no authority to reopen an earlier property division order where no appeal was taken from the prior decree and the time to appeal has run.Grinder v. Grinder, Stark App. No. 2001CA00317, 2002-Ohio-1860, citingBean v. Bean (1983), 14 Ohio App.3d 358, 361, 471 N.E.2d 785. Nonetheless, while a trial court does not have continuing jurisdiction to modify a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment. Gordon v.Gordon (2001), 144 Ohio App.3d 21, 24, 759 N.E.2d 431, citing R.C. 3105.171(I). "If there is good faith confusion over the interpretation to be given to a particular clause of a divorce decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute." Quisenberry v. Quisenberry (1993),91 Ohio App.3d 341, 348, 632 N.E.2d 916 (citations omitted). An appellate court reviews such an interpretive decision by the trial court under a standard of review of abuse of discretion. Id.
 {¶ 19} Appellant asserts that he did not realize at the time he executed the separation agreement that the beneficiary of the Modern Woodmen policy was actually his business partner, and that a similar policy existed for appellant's mutual benefit. Therefore, appellant kept the business partner as the beneficiary on the Modern *Page 7 
Woodmen policy and purchased a term life policy for appellee's benefit through CNA with a $750,000 death benefit. The CNA policy went into effect August 20, 1999.
 {¶ 20} Presently, the CNA policy costs $1,746 per year, which is currently far less than the Modern Woodmen policy. Appellant asserts the CNA term life policy cost will go up steadily in future years. The premium will increase by the thirtieth year to $122,000 per year. By comparison, the Modern Woodmen whole life policy costs appellant about $13,000 per year. The cost does not increase over time. Most of the premium goes towards a cash benefit, but there is virtually no cash value in the policy at this time.
 {¶ 21} After the dissolution, appellant sold his share of the business. No longer needing to insure his business partner, and already having already purchased different insurance for appellee, appellant insured his brother with the Modern Woodmen policy for a time, before remarrying and insuring his second wife. Appellant maintains that the life insurance was in place to make sure that appellee received her property distribution and spousal support if he died before it was all paid off. In contrast, appellee testified it was her understating that appellant would provide her with a life insurance benefit for the remainder of her life. Appellant nonetheless notes that the magistrate, whose decision was ultimately rejected by the trial court judge, orally commented she had never seen a separation agreement requiring a life insurance policy for the ex-spouse's benefit, except to guarantee spousal support. Tr. at 50.
 {¶ 22} Nonetheless, upon review, we will not substitute our judgment for that of the trial court in interpreting its decree and incorporated separation agreement. The life insurance provision was patently part of the quid pro quo of dividing marital assets, and *Page 8 
the parties agreed to language addressing what would happen upon one party predeceasing the other, allowing an inference that the arrangement was for life. No time parameters were otherwise set forth in the separation agreement provision. We find the trial court's interpretive order regarding the Modern Woodmen policy was within the bounds of the court's discretion.
 {¶ 23} Appellant's sole Assignment of Error is therefore overruled.
 Cross-Appeal {¶ 24} In her sole Assignment of Error on cross-appeal, appellee contends the trial court erred in declining to find appellant in contempt. We disagree.
 {¶ 25} In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[A] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also, State v.DeHass (1967), 10 Ohio St.2d 230.
 {¶ 26} During the evidentiary hearing, appellee claimed that she had not been paid all that was due to her in the separation agreement. When called to testify, however, she could not pinpoint a single payment that had been missed. Tr. at 7. Appellant testified that he had found every check he had ever sent to appellee for property division payments, totaling $389,000.00, except two totaling $6,000.00. Tr. at 36. Furthermore, in regard to the life insurance issue, appellant attempted to comply with the spirit of the decree by taking out the CNA policy for appellee's benefit. *Page 9 
 {¶ 27} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. Peterson v. Peterson, Muskingum App. No. CT2003-0049, 2004-Ohio-4714, ¶ 10, citing Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, upon review of the record, we hold the trial court's refusal to make a contempt finding against appellant was not an abuse of discretion.
 {¶ 28} Appellee's sole Assignment of Error on cross-appeal is therefore overruled.
 {¶ 29} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed.
 Wise, J. Gwin, P. J., and Delaney, J., concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed.
 Costs to be split evenly between appellant and appellee. *Page 1