OPINION
{¶ 1} On September 18, 2001, the domestic relations division of the court of common pleas entered a final judgment and decree of divorce terminating the marriage of Kanani Whaley and Rebecca Whaley. The court made certain property division orders which are the subject of this appeal.
 {¶ 2} The court ordered the marital residence listed for sale and upon its sale the proceeds distributed and applied as follows.
 {¶ 3} "1. First Defendant (Rebecca Whaley) shall be entitled to the first $11,700 (which represents her pre-marital appreciation, including down payment) less any reduction in principal on the home mortgage loan attributable to the Plaintiff's (Kanani Whaley's) sole payment of house payments prior to and since the separation of the parties.
 {¶ 4} "2. Next the marital debts shall be paid as follows: MBNA Master Card with an approximate balance of $6,000.00; Sears with an approximate balance of $5,000.00; Lowe's with an approximate balance of $2,700.00; Bank One overdraft of approximately $400.00; the delinquent Dayton Power and Light bill; and the Beneficial consolidation loan.
 {¶ 5} "3. Any balance remaining from the proceeds of sale after payment of the foregoing shall be equally divided between the parties. If the proceeds of the sale are insufficient to discharge the marital debts described in paragraph 2, each party shall be responsible for payment of one-half of the balance of said marital debts, and shall hold the other party harmless thereon."
 {¶ 6} A further provision of the decree states:
 {¶ 7} "IT IS FURTHER ORDERED that within thirty (30) days of the effective date of the filing of this Final Judgment and Decree of Divorce, the parties shall file an amended joint federal income tax return for tax year 2000 and shall equally divide any refund or be equally responsible for any liability thereon, all after taking into account the $1,700.00 presently being held by Plaintiff in a bank account, which was a refund from Defendant's prior filing."
 {¶ 8} On November 5, 2002, the court ordered the parties each to execute documents necessary to complete a contemplated sale of the marital residence and upon closing to allow the net proceeds of sale "to be placed half in each of the respected (sic) attorney's trust account accounts and that no funds are to be distributed until further order of this court."
 {¶ 9} The net proceeds of the sale amounted to $21,291.15. Deposits of one-half of that amount, $10,645.57, were deposited in each attorney's trust account.
 {¶ 10} On March 18, 2004, Rebecca[1] filed a motion asking the court to order the funds held in her attorney's trust account released to her, but that Kanani's attorney be required to continue to hold the funds deposited in his trust account. Rebecca argued that the distribution of $10,645 to her would compensate her for the $11,700 "off the top" of the sale proceeds the court had awarded her, and that after payments of debts the court had ordered she is due an additional $4,850.00 from the sale proceeds.
 {¶ 11} The matter was referred to a magistrate for hearing. On October 20, 2004, the magistrate filed a decision finding that after a set-off the court had ordered of mortgage payments Kanani made prior to the sale, which totaled $3,557.73, from the $11,700 "off the top" Rebecca was awarded, Rebecca is entitled to receive $8,142.27 as her net share of the sale proceeds, leaving $13,148.88 to pay the joint debts the court ordered paid from the proceeds remaining. The magistrate found that Kanani had paid those debts, which in the end totaled $14,402.42, leaving a deficit of $1,253.54. The magistrate divided the deficit equally, requiring Rebecca to reimburse Kanani $626.77 from her net "off the top" share of $8,142.27, reducing the share to $7,515.50. Deducting that amount from the $21,291.15 total held by the parties' attorneys leaves $13,775.65 for Kanani's share, which when added to the $626.77 transfer from Rebecca compensates Kanani for the $14,402.42 in debts that Kanani had paid. The magistrate's decision ordered $7,515.50 distributed to Rebecca and $13775.65 to Kanani.
 {¶ 12} The domestic relations court approved and adopted the magistrate's order on the date it was filed. Rebecca filed timely objections to the magistrate's decision. Rebecca objected that the amount of mortgage payments Kanani had made was overstated by the magistrate's finding because Kanani had not made some of the monthly payments the magistrate credited him with making, and that Kanani had retained $956.00 in insurance and escrow refunds he obtained after the sale. Rebecca argued that after deductions from her "off the top" share of the mortgage payments Kanani in fact made, she is due $9,698.23, not the $7.515.50 the magistrate awarded her after deduction of her one-half share the deficit remaining after bills were paid. She also asked for an adjustment to account for the insurance and escrow funds Kanani retained.
 {¶ 13} Kanani filed a memorandum contra Rebecca's objections. In essence, Kanani argued that the magistrate's findings and conclusions are supported by the record and that Rebecca's failure to file a transcript of the proceedings before the magistrate prevents a finding in Rebecca's favor on the objections she filed.
 {¶ 14} In response, Rebecca represented that the magistrate had denied her request to withdraw $500 from her attorney's trust account to pay for a transcript. Rebecca also argued that Kanani failed to provide discovery which would substantiate her objections.
 {¶ 15} The domestic relations court overruled Rebecca's objections, on January 12, 2005, finding that the lack of a transcript of the proceedings before the magistrate prevented a finding that the magistrate's findings and conclusions to which objections were filed is incorrect. The court relied on the prior decision of this court in Fryman v. Fryman (Nov. 23, 1981), Montgomery App. No. 7187.
 {¶ 16} The court ordered the $21,291.15 net sale proceeds divided, awarding $7,515.50 to Rebecca and $13,775.65 to Kanani, as the magistrate had ordered. Rebecca's attorney was ordered to pay Kanani the $10,645 balance plus any applicable interest held in his trust account. Kanani's attorney was ordered to pay Kanani $3,130.07 from his trust account, but to retain the remaining $7,515.50 pending Rebecca's compliance with other orders of the court. It appears that those other orders concerned Rebecca's cooperation in filing a joint tax return for the year 2000 and to pay her one-half share of any taxes due.
 {¶ 17} On February 11, 2005, Rebecca filed a notice of appeal in Case No. 20911 from the domestic relations court's order of January 12, 2005 overruling her objections, and from the court's prior order of November 5, 2002, which required the parties to cooperate in the sale and to allow the net proceeds of the sale to be deposited in their attorney's trust accounts.
 {¶ 18} The order of November 5, 2002, was a final order. R.C.2505.02. Clearly, with respect to that order the notice of appeal that Rebecca filed on February 11, 2005, is untimely. App.R. 4(A). Therefore, we lack jurisdiction to review any error assigned with respect to the November 5, 2002 order. Moldovan v.Cuyahoga Cty. Welfare Dept. (1986), 25 Ohio St.3d 293.
 {¶ 19} Prior to her notice of appeal in Case No. 20911, on January 26, 2005, Rebecca moved pursuant to Civ.R. 60(B) to vacate the court's judgment and order of January 12, 2005. The court overruled the motion on February 10, 2005. Rebecca filed a notice of appeal from that order on March 4, 2005 in Case No. 20945.
 {¶ 20} The appeals in Case Nos. 20911 and 20945 have been consolidated for review.
FIRST ASSIGNMENT OF ERROR
 {¶ 21} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN THE ISSUANCE OF AN ORDER DATED NOVEMBER 5, 2002 MODIFYING THE PROPERTY DIVISION SET FORTH IN THE FINAL DECREE."
 {¶ 22} The assignment of error is overruled for lack of jurisdiction.
SECOND ASSIGNMENT OF ERROR
 {¶ 23} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY ITS DECISION AND JUDGMENT FILED ON JANUARY 12, 2005."
 {¶ 24} An order entered in a final decree of divorce dividing and distributing the parties' marital property is not subject to future modification by the court. R.C. 3105.171(I).
 {¶ 25} Rebecca argues that the court's order of January 12, 2005 unlawfully modified the property division terms of the prior divorce decree in which she was awarded $11,700.00 "off the top" of the sale proceeds, because the subsequent order directed that the $7,515.50 due Rebecca after bills were paid be kept in the trust account of Kanani's attorney until Rebecca fully complies with the court's order requiring the parties to cooperate in filing a joint tax return for the year 2000 and to equally divide the cost of its preparation as well as any tax liability or refund.
 {¶ 26} "Once the division of property is fixed by the court, both spouses are legally entitled to the share respectively allotted to them." Zimmie v. Zimmie (1984), 11 Ohio St. 3d 94,97, citing Wolfe v. Wolfe (1976), 46 Ohio St.2d 399. While conditions may be attached to spousal support, "[s]uch conditions are not acceptable . . . as limitations on the division of marital property." Id., at 98.
 {¶ 27} Unlike the requirement in the decree that certain bills be paid from the proceeds from sale of the marital residence before the distributive shares of the parties are determined, the January 12, 2005 order deferring distribution of the share the court had determined Rebecca is due until she complies with another order of the court imposes a prohibited condition on Rebecca's entitlement to her share of the marital property. Zimmie. If that cannot be done through the decree, neither can it be done through a subsequent order imposing the condition, which is also a modification of a prior property division order prohibited by R.C. 3105.171(I).
 {¶ 28} The domestic relations court erred when it withheld distribution from Rebecca of the $7,515.50 to which she is entitled. On remand, the court must order that amount distributed to her without conditions.
 {¶ 29} The second assignment of error is sustained.
THIRD ASSIGNMENT OF ERROR
 {¶ 30} "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY ISSUING AN ORDER AND ENTRY DISMISSING APPELLANT'S MOTION TO VACATE FILED ON JANUARY 26, 2005."
 {¶ 31} On January 26, 2005, Rebecca filed a motion pursuant to Civ.R. 60(B), asking the court to vacate its order of January 12, 2005 that had ordered Rebecca's share of the proceeds from the sale of the marital residence retained in the trust account of Kanani's attorney until matters involving the joint tax return for the year 2000 are completed. Rebecca also complained of other parts of the proceeding that occurred earlier but which were not directly related to the January 12, 2005 order. The trial court summarily overruled the Civ.R. 60(B) motion on February 10, 2005.
 {¶ 32} It is unclear from the face of Rebecca's Civ.R. 60(B) motion on what grounds allowed by Civ.R. 60(B)(1)-(5) her motion is founded. However, our resolution of the second assignment of error renders moot the error herein assigned. Therefore, we need not separately determine it. App.R. 12(A)(1)(c).
 {¶ 33} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 34} "THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY DENYING AND/OR DISMISSING WIFE'S MOTION FILED ON MARCH 18, 2004."
 {¶ 35} On March 18, 2004, Rebecca asked the court to permit her attorney to "terminate the trust account into which her one-half of the net proceeds of the sale were placed" and to require Kanani's attorney to continue to hold Kanani's share. Rebecca contends that the magistrate dismissed the motion because Rebecca failed to appear, and that the dismissal was arbitrary.
 {¶ 36} It is unclear from this record on what basis the magistrate disposed of Rebecca's March 18, 2004 motion. However, any such order is one necessarily entered per Civ.R. 53(C)(3)(a) to regulate the proceedings. The record does not reflect that Rebecca timely appealed the magistrate's order to the domestic relations court pursuant to Civ.R. 53(C)(3)(b). Therefore, any error assigned is waived.
 {¶ 37} The fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 38} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ADOPTING THE MAGISTRATE'S DECISION ORDERING THE WIFE TO RETURN PROPERTY LISTED IN EXHIBIT 10 AT HER EXPENSE TO THE HUSBAND."
 {¶ 39} It appears from Rebecca's argument that the decision she complains of was one made prior to the decree of divorce that was granted in 2001, from which no appeal was taken. Obviously, it is one beyond our jurisdiction to review that was invoked by the notices of appeal filed on February 11 and March 4, 2005.
 {¶ 40} The fifth assignment of error is overruled.
SIXTH ASSIGNMENT OF ERROR
 {¶ 41} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DENIED DEFENDANT HER DUE PROCESS RIGHTS BY REFUSING TO GRANT HER MOTION PERMITTING HER ATTORNEY TO WITHDRAW $500.00 FROM THE TRUST MONIES TO UTILIZE FOR OBTAINING A COPY OF THE TRANSCRIPT OF THE HEARING ON SEPTEMBER 20, 2004."
 {¶ 42} On November 21, 2004, following her objections to the magistrate's decision, Rebecca asked the court to permit her attorney to withdraw $500.00 from the $10,645.57 generated by the sale of the marital residence held in his trust account to pay for a transcript of the proceedings before the magistrate. The court eventually overruled Rebecca's objections, in large part because they were not supported by a transcript.
 {¶ 43} The court might have allowed the request, but on this record we cannot find an abuse of discretion. The record, such as it is, does not indicate that Rebecca was without funds to pay for a transcript. Therefore, we cannot find that the court's ruling was inconsistent with substantial justice. Civ.R. 61; Civ.R. 75(A). The sixth assignment of error is overruled.
SEVENTH ASSIGNMENT OF ERROR
 {¶ 44} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY HEARING HUSBAND'S MOTIONS WITHOUT SERVING WIFE IN ACCORDANCE WITH THE OHIO CIVIL RULES."
 {¶ 45} On April 15, 2004, Kanani filed a motion asking the court to reimburse him for the marital debts he had paid from the proceeds from the sale of the marital residence and to distribute the proceeds remaining after the reimbursement. The motion bears a certificate of service on Rebecca's attorney.
 {¶ 46} On June 8, 2004, Kanani filed a motion representing that the required joint tax return for the year 2000 had not been filed and that the distribution of personal property ordered in the divorce decree had not been accomplished. This motion likewise bears a certificate of service on Rebecca's attorney.
 {¶ 47} Rebecca contends that these motions were not served on her personally, as they should have been, and that service on her attorney, which she does not dispute, was insufficient.
 {¶ 48} The fact that these motions were served on Rebecca's attorney do not demonstrate that they were not also served on Rebecca. However, and because Rebecca relies on the prior decision of this court in Cowgill v. Cowgill (February 7, 2003), Darke App. No. 02CA1587, we shall address her arguments.
 {¶ 49} Civ.R. 75(J) states:
 {¶ 50} "Continuing jurisdiction. The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6. When the continuing jurisdiction of the court is invoked pursuant to this division, the discovery procedures set forth in Civ.R. 26 to 37 shall apply."
 {¶ 51} Civ.R. 5 states that pleadings and motions subsequent to the original complaint may be filed on a party's attorney. InCowgill, we construed Civ.R. 75(J), which was then denominated Civ.R. 75(I), to hold that service of post-decree charges in contempt on an attorney who had represented the adverse party in the divorce proceeding was insufficient service to invoke the court's continuing jurisdiction.
 {¶ 52} The term "continuing jurisdiction" as it appears in Civ.R. 75(J) refers to the court's power to adjudicate claims for relief after its jurisdiction has otherwise been terminated by a final order or judgment. Those claims may include matters concerning enforcement or modification of court's prior orders for the care and support of children of the marriage entered pursuant to R.C. Chapter 3109 and 3119. They also may apply to spousal support orders in which the court has "reserved jurisdiction" to modify its order pursuant to R.C. 3105.18(E). They may also involve charges in contempt, as Cowgill did. And, as in Cowgill, the claims made present new issues of fact which were not determined by the relief granted in the prior divorce decree. The court's continuing jurisdiction to decide those issues and grant additional relief is thus "invoked."
 {¶ 53} In the present case, neither of the motions that Katani filed and about which Rebecca complains present a new issue of fact for the court to decide in relation to the relief it had granted in the divorce decree. The motions instead report Kanani's compliance with the provisions of the decree requiring payment of joint debts and seek the resulting distribution of the remaining marital property ordered in the decree. Like a QDRO entered subsequent to a divorce decree and consistent with its terms, the relief the motions sought were merely in aid of the relief the court had granted in the decree. Tarbert v. Tarbert
(September 27, 1996), Clark App. No. 96-CA-0036. So long as they do not seek to vary from, enlarge, or diminish the relief the court previously granted, no jurisdiction, original or continuing, is "invoked" for purposes of Civ.R. 75(J).
 {¶ 54} Kanani's claim in the motion he filed on June 8, 2004 that the required joint tax return had not been filed presents an issue of fact that had not been determined in the decree. Therefore, as in Cowgill, service on Rebecca was required. However, any error in the relief the court granted on Kanani's motion is rendered moot by our resolution of the second assignment of error, which reverses and vacates the particular relief the court granted.
 {¶ 55} The seventh assignment of error is overruled.
 Conclusion {¶ 56} Having sustained the second assignment of error, we will reverse and vacate the judgment from which the appeal was taken, in part, and remand for further proceedings in that respect consistent with this opinion. The judgment is otherwise affirmed.
Brogan, J. and Fain, J., concur.
[1] For clarity and convenience, the parties are identified by their first names.