[Cite as *Deim v. Deim*, 2013-Ohio-501.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| CHERYL C. DEIM | : | Patricia A. Delaney, P.J. |
| | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 11 CAF 12 0119 |
| | : | |
| | : | |
| EDWARD B. DEIM | : | O P I N I O N |
| Defendant-Appellant | | |

CHARACTER OF PROCEEDING:           Civil Appeal from Delaware County
Court of Common Pleas, Domestic
Relations Division, Case No.
07DRA09432

JUDGMENT:           Affirmed In Part and Reversed
In Part; Judgment Modified & Entered

DATE OF JUDGMENT ENTRY:           February 11, 2013

APPEARANCES:

For Plaintiff-Appellee           For Defendant-Appellant

DAVID J. GORDON           ANDREA R. YAGODA
40 North Sandusky Street, Suite 300           2000 Henderson Road, Suite 250
Delaware, Ohio  43015           Columbus, Ohio  43221

*Delaney, P.J.*

**{¶1}** Defendant-appellant, Edward Deim, appeals from the December 2, 2011 Judgment Entry of the Delaware County Court of Common Pleas, Domestic Relations Division.

*STATEMENT OF THE FACTS AND CASE*

**{¶2}** Appellant Edward Deim and appellee Cheryl Deim were married on July 13, 1986. On September 10, 2007, appellee filed a complaint for divorce against appellant.

**{¶3}** After a trial in February of 2009, a Judgment Entry Decree of Divorce was filed on September 29, 2009. The Decree stated, in relevant part, as follows:

**{¶4}** "7. The real estate of the Parties located at 5956 County Rd. 15, Centerburg, Ohio shall be sold at such price, using such agents, in such manner and on such terms as the Parties may agree. The proceeds of the sale shall be paid as follows:

**{¶5}** "(i) to the usual costs of sale;

**{¶6}** "(ii) to the debts on the premises to Farm Credit Bank;

**{¶7}** "(iii) to the Parties equally, adjusted by the amount that either Party may then be in arrears on any obligation under the final Decree herein.

**{¶8}** "Until the house is sold, Edward shall have exclusive possession thereof. Edward shall pay the mortgage payment, real estate taxes that are billed and due before closing, insurance, and ordinary maintenance and repairs on the premises until sale." The trial court retained jurisdiction over the manner and terms of the sale.

**{¶9}** The Decree further awarded appellant RKE Trucking, RKE Management Company, and Fast Eddie's Leasing, Inc. With respect to the businesses, the Decree

stated in paragraph 12, in relevant part, as follows: "Edward shall pay Cheryl $312,000.00 for her interest in the business within 90 days of the date hereof or the businesses and their property shall be sold and the proceeds divided equally. Edward shall pay any obligations due thereon."

{¶10} In paragraph 14 of the Divorce Decree, the trial court ordered appellant to pay the following debts and hold appellee harmless thereon: Stover and Turner ($48,557.00), Rookstools Painting ($1,980.00), Midwest Audio ($9,441.00), and Porter Drywall ($18,000.00). The Decree further provided that if appellant elected to purchase the residence from appellee, he would be responsible for the above debts. However, if appellant sold the residence, then the "debts shall be netted from the gross sales price even if [appellant] pays all or part of one or more of these debts before closing."

{¶11} After the marital home failed to sell, on November 16, 2009, appellant filed a Motion for the Court to Determine the Listing Contract Terms, Realtor and Price. Appellant, in his motion, asked the trial court to "exercise its continuing jurisdiction over the matter of the sale of the marital residence, so that an appropriate listing contract, realtor and price can be determined…" On November 18, 2009, appellee filed a motion asking, in part, that appellant be required to list the marital residence with an auctioneer.

{¶12} On March 17, 2010, appellant filed a First Amended Motion for Court to Determine the Listing Contract Terms, Realtor and Price and Award of Principal Reduction. Appellant, in such motion, asked that he be awarded the principal reduction in the mortgage on the marital residence from March 1, 2009 to the date of sale.

**{¶13}** Appellee, on March 23, 2010, filed a Motion to Show Cause, asking that appellant be held in contempt for failing to comply with court orders. Appellee, in the affidavit attached to her motion, alleged, in relevant part, as follows:

**{¶14}** "1. The Judgment Entry – Decree of Divorce filed September 29, 2009, pg. 8, item 12, last paragraph required the Defendant to pay to the Plaintiff the sum of $312,000.00 for her interest in the business within 90 days of the filing of the Decree (or by December 29, 2009) or the business and property was to be sold and the proceeds divided equally.

**{¶15}** "2. The Defendant has failed to pay Affiant the sum of $312,000.00 and has also failed to sell the business and pay the Plaintiff one-half the sale proceeds. Further, the Defendant has continued to operate a trucking business at the Frost Road property. He has sold some of the trucks of the business. However, he has not listed the business for sale as a whole, but only piecemeal. The Defendant has not provided the Plaintiff with any information as to any vehicles or other items of the business he has sold.

**{¶16}** "3. Further, the Judgment Entry – Decree of Divorce pg. 8, item 12, last paragraph required the Defendant to pay any obligations due for RKE Trucking, RKE Management Company, and Fast Eddie's Leasing, Inc. The Court is aware that the Plaintiff had a dump truck tiled (sic) in her individual name and the loan was in her name as well. However, this dump truck was used in the business value and therefore the obligation to pay the same is on the Defendant. The Wife has received calls from Daimler advising that the payment has not been made on said dump truck for January, February and March 2010.

**{¶17}** "4. The Plaintiff has a buyer for the dump truck. The Defendant was advised of the same in January 2010. The Defendant has refused to sell the dump truck and to pay Daimler the payment for said dump truck."

**{¶18}** The marital residence sold and garnered gross proceeds of $207,019.52. Pursuant to Magistrate's Order filed on July 23, 2010, the parties were ordered to deposit $207,019.72 with the Delaware County Clerk of Courts. A Nunc Pro Tunc Magistrate's Order was filed on July 27, 2010, that amended such amount to $207,019.52.

**{¶19}** A hearing before a Magistrate was held on February 10, 2011. At the hearing, appellee testified that appellant had not paid her the $312,000.00 specified in paragraph 12 of the Divorce Decree and that he had not paid her any monies for RKE Trucking, RKE Management and Fast Eddie's Leasing, Inc. She testified that she thought that she was to receive $312,000.00 for her interest in the businesses. She testified that appellant operated the businesses from February 17th and 18th of 2009 up until selling the equipment. Appellee testified that appellant sold 17 trucks from the businesses for $706,550.10 (Exhibit 2). Appellee's Exhibit 2A was introduced which showed that the businesses had a Daimler Financial loan in the amount of $290,577.00, that appellant's net proceeds before taxes from the liquidation of trucks was $259,653.00 and that, after taxes the net proceeds were $173,111.00. According to appellee, the Decree did not say anything about taxes or paying the debt.

**{¶20}** Appellee also testified that at least 12 of the trucks from the businesses were auctioned off. She also testified that, on January 22, 2010, she made a demand for her $312,000.00.

**{¶21}** On cross-examination, appellee testified that she had not made any payments on the marital residence since the Divorce Decree and that she did not live there. She testified that the monthly mortgage payment was approximately $4,800.00. An exhibit (Defendant's Exhibit B) showing that the amount was $4,877.67 a month was admitted. As of February of 2009, the ending principal balance on the mortgage was $537,751.22. At the time of closing, the mortgage balance was $502,656.65, for a difference of $35,094.57.

**{¶22}** At the hearing, appellant testified that he realized that he would not be able to buy appellee out of the businesses and determined that he had to liquidate the assets of the businesses. Appellant testified that as he sold trucks, he applied the funds to the RKE Trucking account. Exhibits were introduced showing that appellant sold a 1997 Ford Dump Truck in February of 2009 for $15,000.00, a 2004 Sterling in March of 2009 for $44,000.00, a 2000 Sterling in July of 2009 for $24,000.00, and a 2001 Sterling in November of 2009 for $36,000.00 (Exhibits K, L, M, and N). All of the money went into the RKE Trucking account. In addition, appellant sold a SBC Truck in April of 2010 for $33,750.00 (Exhibit F). There was a lien with Daimler on such truck in the amount of $7,259.00.

**{¶23}** The majority of the trucks (12) owned by the businesses were auctioned through Richie Brothers Auction.  Richie Brothers paid Fast Eddie's Leasing/RKE Trucking $371,000.00 for the trucks.  However, Daimler Truck Financial had liens against seven (7) of the trucks in the amount of $290,577.41 (Exhibit G). Richie, after paying off the liens, wired a check to Fast Eddie's in the amount of $80,422.580 on December 1, 2009. Additionally, Richie Brothers, on January 4, 2010, wired Fast

Eddie's an additional $75,250.00. Appellant testified that this amount "was called a participation agreement that if they went over the amount they thought they would go for, they split the money with me percentage wise." Transcript at 151. Appellant testified that he only received approximately $150,000 from the auction of the trucks.

{¶24} The Magistrate, in a Decision filed on April 12, 2011, recommended that the debts to Stover & Turner ($48,557.00) and Porter Drywall ($18,000.00) should be deducted from the $207,019.52 proceeds from the sale of the marital residence and that the balance ($140,462.52) should be equally divided between the parties pursuant to the Decree so that each party would receive $70,231.26. The Magistrate found that appellant had paid down the mortgage by $32,944.87. The Magistrate further found that the trucks for the parties' business had sold for a total of $301,164.00 once liens and other costs were deducted. The Magistrate recommended that each party receive half of such figure, or $150,582.00, and also that each party receive half of the $9,500.00 (or $4,750.00) that appellant received after selling miscellaneous business equipment. In short, the Magistrate recommended that appellee be awarded $225,563.26 ($70,231.26 + $150,682.00 + $4,750.00), that the Clerk of Courts pay appellee the $207,0192,52 that had been previously deposited from the sale of the house, and that appellant be ordered to pay the difference of $18,543.74 to appellee.

{¶25} Both parties filed objections to the Magistrate's Decision. Appellant, in his objections, argued that the Magistrate erred in failing to credit him the sum of $32,944.87 in principal reduction on the mortgages on the marital residence from the date of termination of marriage to the date of sale, that the Magistrate failed to take into consideration the tax consequence of the businesses for the depreciation recapture on

the trucks sold in the amount of $86,562.00 and that the Magistrate failed to take into consideration the outstanding unsecured debts of each business. Appellant further argued that the trial court did not retain jurisdiction over the division of property as relating to the sale of the businesses and that the Magistrate erred in failing to credit him with the debts to Stover & Turner, Rookstool's Painting, Midwest Audio, and Porter Drywall. In his supplemental objections, appellant alleged that the Magistrate erred in finding and awarding appellee the sum of $225,563.26 and ordering the release of the funds on deposit with the Clerk of Courts from the sale of the marital residence.

{¶26} Pursuant to a Judgment Entry filed on December 2, 2011, the trial court overruled the parties' objections in part and granted the same in part. The trial court held that appellant should receive credit for the Stover & Turner debt of $48,557.00 and the Porter Drywall debt of $18,000.00 and that once such sums were deducted from the $207,019.52 proceeds of the parties' real estate, each party would receive $70,231.26. However, the trial court further found that appellant had failed to pay $7,032.23 in real estate taxes while the case was pending and that the amount should be added back to the real estate proceeds. The trial court noted that appellee's share of the proceeds would be $73,747.38 if the real estate taxes had been paid  and ordered that appellant's share would be $66,715.14 ($140,462.52-$73,747.38). The trial court also found that appellant should not receive credit for the $32,944.87 by which the mortgage balance was reduced.  The trial court noted that the Divorce Decree "was clear that [appellant] would not receive a credit for the mortgage paydown" and that appellant had lived rent free in the residence.

**{¶27}** The trial court, in its Judgment Entry, also found that the Daimler Financial debt was "specifically found to be the obligation of [appellant] in Paragraph 12 of the original decree" and that the net proceeds from the Richie truck auction were $371,000.00 rather than the $301,164.00 found by the Magistrate. The trial court found that the total proceeds from the sale of the trucks was $516,491.00 and ordered that appellee was entitled to half of such amount, or $258,246.00. The trial court found that appellee was entitled to a total of $336,743.38 ($73,747.38 from her share of the real estate + $258,246.00 from her share of the trucks + $4,750.00 from her share of the miscellaneous equipment). The trial court awarded appellee such amount and ordered that the Clerk of Courts pay appellee the $207,019.52 on deposit. Finally, the trial court granted appellee a judgment against appellant in the amount of $129,723.86 ($336,743.38 - $207,019.52).

**{¶28}** Appellant now appeals from the trial court's December 2, 2011 Judgment Entry, raising the following assignments of error on appeal:

**{¶29}** "I. THE TRIAL COURT ABUSED ITS DISCRETION, AND ACTED CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN DIVIDING THE PROCEEDS REALIZED FROM THE SALE OF THE COUNTY ROAD RESIDENCE.

**{¶30}** "II. THE TRIAL COURT ABUSED ITS DISCRETION, AND ACTED CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN DIVIDING THE PROCEEDS REALIZED FROM THE SALE OF THE BUSINESS.

**{¶31}** "III. THE TRIAL COURT LACKED JURISDICTION TO AWARD APPELLEE APPELLANT'S SHARE OF THE PROCEEDS FROM THE MARITAL RESIDENCE TO SATISFY A DEBT OWED FOR THE SALE OF THE BUSINESS."

*I.*

**{¶32}** Appellant, in his first assignment of error, argues that the trial court erred in dividing the proceeds realized from the marital residence.

**{¶33}** Appellant initially argues that the trial court erred in finding that appellant was responsible for $7,032.23 in unpaid property taxes. As is stated above, the Judgment Entry Decree of Divorce provided that until the marital residence was sold, appellant shall pay "real estate taxes that are billed and due before closing…" The Decree further provided that, until the office [1] was sold, appellant would pay "real estate taxes that are billed and due before closing..." The trial court, in its Decree, retained jurisdiction over "the manner and terms of the sale, including price, the interim obligations of the Parties, and the division of proceeds in the event of disagreement thereto."

**{¶34}** Appellee is correct that a trial court has no authority to reopen an earlier property division order where no appeal was taken from the prior decree and the time to appeal has run. In the case sub judice, no appeal was taken from the Divorce Decree. However, this Court has recognized that a trial court has the power to clarify and construe its original property division so as to effectuate its judgment. See *Wilkins v. Lorenz,* 5th Dist. No. 2008 AP 03 0012, 2009–Ohio–107, ¶ 18, citing *Gordon v. Gordon*, 144 Ohio App.3d 21, 24, 759 N.E.2d 431 (8th Dist. 2001), citing R.C. 3105.171(I). "If there is good faith confusion over the interpretation to be given a particular clause of a

---

[1] The parties' also owned an office located in Westerville, Ohio.

divorce decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute." *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 348, 632 N.E.2d 916  (2nd Dist. 1993) (citations omitted). An appellate court reviews such an interpretive decision by the trial court under a standard of review of abuse of discretion. *Id.*  See also, *Drummond v. Drummond,* 5th Dist. No. 10–CA–20, 2010–Ohio–6139, ¶ 24. See *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983) (an abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable.").

**{¶35}** Appellant argues that the trial court erred in ordering him to pay real estate taxes because while the first half of the real estate taxes for 2010 had been assessed, they were not yet billed and due.  However, we concur with appellee that the trial court's language in the Divorce Decree, "indisputably displays intent for Appellant to be responsible for all real estate taxes until the sale of the Property" and that the trial court did not abuse its discretion in holding appellant responsible for $7,032.23 in unpaid property taxes.  The HUD -1 Settlement Statements from both tracts of land (the marital home and the office) were admitted at the hearing as appellee's Exhibits 8 and 9. Exhibit 8 shows that, with respect to the parties' vacant real property,[2] $293.71 in county taxes was owed at the time of the closing on such property for the period from January 1, 2010 until July 16, 2010 and that 2nd half real taxes in the amount of $3,534.44 were paid to the Morrow County Treasurer.   Exhibit 9 shows that, with respect to the parties' marital residence, county property taxes in the amount of

---

[2] There were two tracts of property that the parties were trying to sell.  While the marital house was on one tract, the other tract was vacant land.

$3,495.79 for the period from January 1, 2010, until July 19, 2010, were paid at the July 19, 2010, closing.

**{¶36}** Appellant also contends that the trial court erred in failing to deduct from the proceeds of the marital residence the debts to Midwest ($9,441.00) and Rookstools Painting ($1,980.00).

**{¶37}** The Divorce Decree stated that appellant was responsible for the following debts and was to hold appellee harmless with respect to the same: Stover and Turner ($48,557.00), Rookstools Painting ($1,980.00), Midwest Audio ($9,441.00) and Porter Drywall ($18,000.00). The Decree also provided that if appellant sold the marital residence, "then these debts shall be netted from the gross sales price even if Edward pays all or part of one or more of these debts before closing." (Emphasis added).

**{¶38}** After the Magistrate, in his April 12, 2011 Decision, deducted the debts to Stover & Turner and Porter Drywall from the gross proceeds from the sale of the house but did not deduct the debts to Midwest Audio and Rookstool's Painting, appellant, in his objections, argued that he should have been credited with the same. The trial court, in its December 2, 2011 Judgment Entry, ordered that appellant was to receive credit for the Stover and Turner debt and the Porter Drywall debt, but did not credit appellant with the other two remaining debts.

**{¶39}** We find that the trial court abused its discretion in failing to credit appellant with the debts to Midwest ($9,441.00) and Rookstool's Painting ($1,980.00). The Decree clearly and unambiguously stated that if appellant sold the marital residence, "then these debts shall be netted from the gross sales price even if [appellant] pays all or part of one or more of these debts before closing." (Emphasis added). While the trial

court netted the debts to Stover and Turner and Porter Drywall, it failed to credit the debts to Midwest Audio ($9,441.00) and Rookstools Painting ($1,980.00), for a total credit of $11,421.00.

**{¶40}** In his first assignment of error, appellant finally argues that the trial court erred in not crediting him with the diminution in the mortgage. Appellant notes that between the time the temporary orders expired in February of 2009 and the time the marital home was sold on July 19, 2010, he made seventeen (17) $4,877.00 mortgage payments totaling $82,920.39. Appellant contends that of this amount, $35,185.57 was applied to principal reduction of the mortgage and that he should have been credited with such amount.

**{¶41}** The Divorce Decree awarded appellant exclusive possession of the marital residence until the house was sold and ordered that appellant pay the mortgage payments. The Decree did not grant appellant a credit for a reduction in the mortgage balance[3]. The trial court, in its December 2, 2011, Judgment Entry, specifically stated, in relevant part, as follows: "Paragraph 7 of the original decree dated September 27, 2009 was clear that [appellant] would not receive a credit for the mortgage paydown." Appellant did not appeal from the trial court's Divorce Decree and, therefore, cannot raise such issue now.

**{¶42}** Appellant's first assignment of error is, therefore, overruled in part and sustained in part.

---

[3] In contrast, in *Jackson v. Jackson*, 5th Dist. No. 09CA0013, 2010-Ohio-4912, cited by appellant, the Decree expressly stated that the appellee was to pay the mortgage and expenses during the pendency of the action and to be credited for any reduction in the mortgage balance.

*II.*

**{¶43}** Appellant, in his second assignment of error, argues that the trial court erred in dividing the proceeds realized from the sale of the business.

**{¶44}** The Divorce Decree stated in item number 12, in relevant part, as follows: "[Appellant] [shall] be awarded the following items of intangible personal property:…RKE Trucking, RKE Management Company, and Fast Eddie's Leasing, Inc.(Edward shall pay Cheryl $312,000 for her interest in the business within 90 days of the date hereof or the businesses and their property shall be sold and the proceeds divided equally. Edward shall pay any obligations due thereon)."

**{¶45}** At issue herein is the meaning of the phrase "Edward shall pay any obligations due thereon" as used in the Decree. We note that appellant did not appeal from the Decree. Appellant argues that such provision is ambiguous and that, "[i]n determining the meaning and intent of said provision the equities and the law must be considered."

**{¶46}** The Magistrate, in his April 12, 2011 Decision, stated, in relevant part, as follows:

**{¶47}** "6. The trucks of the Parties' companies sold as follows:

| "12 Trucks | Richie Auction | 553,500 |
|---|---|---|
| | Regular Commission | (75,000) |
| | Override Commission | (32,250) |
| | Daimler Financial | (290,577) |
| | Net Richie Auction | 155,673 |
| 1997 Ford Dump Truck | Erhart, 2/23/09 | 15,000 |

| | | |
|---|---|---|
| 2004 Sterling | J. Siverhus 3/23/09 | 44,000 |
| 2000 Sterling | E. Freeman 7/1/09 | 24,000 |
| 2001 Sterling | Baxter Trucking 11/13/09 | 36,000 |
| SBC Truck | Siverhus, 4/19/10 | 33,750 |
| SBC Truck lien | | (7,259) |
| | | 301,164 |
| Cheryl's ½ | | 150,582 |
| Edward's ½ | | 150,582" |

{¶48} Appellant, in his objections to such decision, argued that the court failed to take into consideration the tax consequences of the businesses for the depreciation recapture on the trucks sold in the amount of $86,562.00 and did not take into consideration the outstanding unsecured debts of each of the businesses, which totaled $329,362.29. Appellant argued that "[t]he 'sale of the business' as ordered by the court, would include any debt both secured and unsecured and resulting tax consequences for such liquidation of assets of said businesses, would be the only fair and equitable interpretation. The fact that Defendant was in the last sentence ordered to pay the debt associated with said businesses, would only apply if he kept the businesses and bought the Plaintiff's equity interest out. To order the sale of the business and not include the (sic) all debts (secured, unsecured and tax consequences) and assets, would be unjust and not equitable."

{¶49} The trial court, in ruling on appellant's objections, found that the Daimler debt was "specifically found to be the obligation of Edward in Paragraph 12 of the

original decree dated September 27, 2009." The trial court further found that the net proceeds from the Richie Auction of the 12 trucks were $371,000. After adding the $371,000.00 to the $152,750.00 received from the sale of the 5 trucks specified in the Magistrate's Decision and deducting out the $7,259.00 lien on the SBC truck, the court arrived at a figure of $516,491.00 and ordered that appellee was entitled to half of such figure, or $258,246.00.

{¶50} In *Wilkens v. Lorenz,* 5th Dist. No. 2008 AP 03 0012, 2009–Ohio–107, this Court observed, "Under the principle of finality of judgments, a trial court has no authority to reopen an earlier property division order where no appeal was taken from the prior decree and the time to appeal has run. *Grinder v. Grinder,* 5th Dist. No. 2001 CA00317, 2002–Ohio–1860, citing *Bean v. Bean* (1983), 14 Ohio App.3d 358, 361, 471 N.E.2d 785. Nonetheless, while a trial court does not have continuing jurisdiction to modify a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment. *Gordon v. Gordon* (2001), 144 Ohio App.3d 21, 24, 759 N.E.2d 431, citing R.C. 3105.171(I). 'If there is good faith confusion over the interpretation to be given to a particular clause of a divorce decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute.' *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 348, 632 N.E.2d 916 (1993) (citations omitted). An appellate court reviews such an interpretive decision by the trial court under a standard of review of abuse of discretion. *Id.*" *Wilkens v. Lorenz*, ¶ 18. (Internal quotation marks omitted). See also, *Drummond v. Drummond,* 5th Dist. No. 10–CA–20, 2010–Ohio–6139, ¶ 24.

{¶51} Upon review, we find the trial court did not abuse its discretion in its interpretation of the Divorce Decree. Under paragraph 12 of the Decree, appellee was supposed to receive, for her interest in the trucking business, the sum of $312,000.00 from appellant within ninety days, or else receive one-half of the proceeds of the alternative liquidation of said business. Nonetheless, more than three years later, appellee has received nothing for her interest, and if appellant's position is followed, may never see anything. This is despite evidence that appellant continued to operate the business well after the divorce, selling off some assets in a piecemeal fashion. The trial court, in the judgment entry under appeal, interpreted its decree such that appellee was to be awarded, inter alia, $258,246.00 from the sale of the trucks and $4,750.00 from miscellaneous equipment. While the trial court's decision may have required appellant to bear the brunt of the business debt, the trial court's analyses of the property division equities and the meaning of its decree did not constitute an abuse of discretion.

{¶52} We therefore overrule appellant's second assignment of error.

*III.*

{¶53} Appellant, in his third assignment of error, argues that the trial court lacked jurisdiction to award to appellee a share of the proceeds from the sale of the marital residence to satisfy a debt owed for the sale of the business.

{¶54} The trial court, in its December 2, 2011, Judgment Entry, awarded appellee the total sum of $336,743.38 and ordered the Clerk of Court to pay appellee the $207,019.52 plus interest that the clerk held as proceeds from the sale of the marital residence. Appellant now contends that the trial court lacked jurisdiction to do so.

{¶55} Appellant specifically cites to *Whaley v. Whaley*, 2nd Dist Nos. 20911, 20945, 2006-Ohio-770. In *Whaley*, the parties' decree ordered that the marital residence was to be sold and that the proceeds were to be divided in a specified manner. The decree also ordered the parties to file an amended joint tax return. After the marital residence was sold and the parties could not agree on how the proceeds were to be divided, the matter was heard by the trial court. The trial court specified how the proceeds were to be divided, but ordered that the wife's share of the proceeds be held in her attorney's trust account pending her compliance with the court's order requiring the parties to cooperate in filing a joint tax return for the year 2000.

{¶56} In reversing the decision of the trial court, the court, in *Whaley*, stated, in relevant part, as follows: "'Once the division of property is fixed by the court, both spouses are legally entitled to the share respectively allotted to them.' *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 97, 11 OBR 396, 464 N.E.2d 142, citing *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. While conditions may be attached to spousal support, '[s]uch conditions are not acceptable * * * as limitations on the division of marital property.' Id. at 98, 11 OBR 396, 464 N.E.2d 142.

{¶57} "Unlike the requirement in the decree that certain bills be paid from the proceeds from sale of the marital residence before the distributive shares of the parties are determined, the January 12, 2005 order deferring distribution of the share the court had determined Rebecca is due until she complies with another order of the court imposes a prohibited condition on Rebecca's entitlement to her share of the marital property. *Zimmie*. If that cannot be done through the decree, neither can it be done

through a subsequent order imposing the condition, which is also a modification of a prior property division order prohibited by R.C. 3105.171(I).

**{¶58}** "The domestic relations court erred when it withheld distribution from Rebecca of the $7,515.50 to which she is entitled. On remand, the court must order that amount distributed to her without conditions." Id at paragraphs 26-28.

**{¶59}** Appellee, in turn, argues that the trial court, in the Decree, retained jurisdiction to make a distributive award. Appellee notes that in the Decree, the trial court stated, in relevant part, as follows:

**{¶60}** "7. The real estate of the Parties located at 5956 County Rd. 15, Centerburg, Ohio shall be sold at such price, using such agents, in such manner and on such terms as the Parties may agree.  The proceeds of the sale shall be paid as follows:

**{¶61}** "(i) to the usual costs of sale;

**{¶62}** "(ii) to the debts on the premises to Farm Credit Bank;

**{¶63}** "(iii) *to the Parties equally, adjusted by the amount that either Party may then be in arrears on any obligation under the final Decree herein.*

**{¶64}** "Until the house is sold, Edward shall have exclusive possession thereof. Edward shall pay the mortgage payment, real estate taxes that are billed and due before closing, insurance, and ordinary maintenance and repairs on the premises until sale*… [t]his court shall retain jurisdiction over the manner and terms of the sale including the price, the interim obligations of the Parties, and the division of proceeds in the event of disagreement thereto."*

**{¶65}** We concur with appellee that the above language provides the trial court with authority to make an award like it did in the case sub judice.  Moreover, unlike in

the *Whaley* case, the trial court did not modify the property division between the parties, but rather "merely ordered certain monies to be paid toward the equitable property division previously ordered." This is not a situation where the trial court held money rightfully due to a party in order to enforce compliance with other terms in the decree.

**{¶66}** Moreover, even if the above language does not address the exact situation sub judice, "[a] trial court's authority to set off one judgment against another involving the same parties is a well-established equitable principle and will not be disturbed absent an abuse of discretion." *Krause v. Krause,* 35 Ohio App.3d 18, 19, 518 N.E.2d 1221 (12th Dist.1987), citing *Barbour v. National Exchange Bank,* 50 Ohio St. 90, 98, 33 N.E. 542 (1893). An abuse of discretion implies that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).  We find that the trial court did not lack of jurisdiction to offset the $336,743.38 awarded to appellee by the $207,019.52 held by the clerk on appellant's behalf.  But, we acknowledge the numbers will now be different based on our disposition of the first assignment of error.

**{¶67}** Appellant's third assignment of error is, therefore, overruled as to the trial court's jurisdiction to do such an offset.

{¶68} Accordingly, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part.

{¶69} In light of our disposition of appellant's first assignment of error and pursuant to App. R. 12, the trial court's judgment in favor of appellee is affirmed but modified to $118,302.86 ($129,723.86 - $11,421.00) and judgment is entered accordingly against appellant.

By: Delaney, P.J. and

Wise J. concurs;

Edwards, J. concurs in part

and dissents in part

_____

_____

_____

JUDGES

EDWARDS, J., CONCURRING IN PART & DISSENTING IN PART OPINION

{¶70} I concur with the majority as to its analysis and disposition of the first and third assignments of error.

{¶71} I respectfully disagree with the majority as to its analysis and disposition of the second assignment of error.

{¶72} I find that the trial court abused its discretion in not taking into consideration the outstanding debts and tax consequences of liquidation of each of the businesses. At the time of the divorce, the appellant's expert, in valuing the businesses, clearly included the businesses' debts in arriving at a valuation of $182,000.00. The trial court adopted that valuation, plus the $442,000.00 in secured debt which had already been accounted for in calculating the equity in the Frost Road property, in arriving at the valuation of the businesses in the divorce decree ($624,000.00). It would be unreasonable and arbitrary now to refuse to consider the debts, that were not already accounted for in calculating the equity in the Frost Road property, and the reasonable costs of liquidation when dividing the proceeds realized from the sale of the businesses. In other words, I find that it would be arbitrary and unreasonable to find that the word "proceeds" in the relevant section of the Decree does not mean net proceeds.

{¶73} In addition, if the trial court's original intention was to order the appellant to pay all debts of the businesses upon sale, but receive only half of the gross proceeds, that would be an unequal division of property. If the trial court considered such an unequal division of property to be an equitable division of property, then, pursuant to R.C. 3105.171(G), it should have issued findings of fact to support its finding that such a

division was an equitable division of property. And, as noted in appellant's brief, "Nothing contained in the Magistrate's Decision nor the Decree nor the post decree entry reflect that, upon sale of the business, requiring Appellant to bear all the debt related to the businesses…would be equitable." Therefore, I have no reason to believe that the trial court in the Divorce Decree was attempting anything other than an equal division of property. This absence of findings of fact to justify an unequal division of property also leads me to conclude that each party should get half of the net proceeds of the liquidation of the businesses.

{¶74} Therefore, I find that the language in the Decree which states, "Edward shall pay any obligations due thereon," means that appellant was to be responsible for the debt if he retained the businesses or that he was to pay the debts until the businesses were sold. I make no determination as to whether this language in the Decree addresses the situation in which the debts and costs of liquidation of the businesses exceed the gross proceeds from the businesses. The trial court would make that determination if, upon remand, the trial court determined that the debts and costs of liquidation exceeded the gross proceeds.

{¶75} I realize that the result of my interpretation of the decree may be that appellee receives nothing for her interest in the businesses. One must ask whether appellant was engaged in some questionable financial manipulations that resulted in such a large loss of value to his businesses in such a short time. Nevertheless, I still find that the original intent of the words in the decree were meant to divide the net proceeds from the sale of the businesses.

{¶76} My preceding analysis was based on the issue presented to this Court regarding the interpretation of the language of the divorce decree regarding the division of business sale proceeds. The trial court found that appellant sold his businesses, a finding I would not have made. The appellant sold assets of his businesses, but never sold the businesses. He has kept operating his businesses, somewhat slimmed down, but still operating. Had that finding been challenged on appeal, I never would have reached the issue of the interpretation of the language of the divorce decree dealing with division of business sale proceeds.

_____

Judge Julie A. Edwards

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHERYL C. DEIM | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| EDWARD B. DEIM | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 11 CAF 12 0119 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed in part, and reversed in part. Pursuant to App. R. 12, the trial court's judgment in favor of appellee is affirmed but modified to $118,302.86 and entered accordingly against appellant. Costs assessed 50% to appellant and 50% to appellee.

_____

_____

_____

JUDGES